*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0095p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

PAUL BROWN, WILLIAM FANALY, CHARLES
THOMAS, GARY RIGGS, ROBERT
ORLIKOWSKI, SCOTT WAY,
     *Plaintiffs-Appellants,*

   *v.*

CASSENS TRANSPORT COMPANY, CRAWFORD
& COMPANY, SAUL MARGULES,
     *Defendants-Appellees.*

No. 10-2334

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-72316—Paul D. Borman, District Judge.

Argued: July 7, 2011

Decided and Filed: April 6, 2012

Before: MOORE, COLE, and GIBBONS, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Jeffrey T. Stewart, SEIKALY & STEWART, P.C., Farmington Hills, Michigan, for Appellants. Janet E. Lanyon, DEAN & FULKERSON, P.C., Troy, Michigan, Timothy R. Winship, THE WILLIAMS FIRM, P.C., Grand Blanc, Michigan, for Appellees. **ON BRIEF:** Jeffrey T. Stewart, SEIKALY & STEWART, P.C., Farmington Hills, Michigan, Marshall Lasser, MARSHALL LASSER, P.C., Southfield, Michigan, for Appellants. Janet E. Lanyon, DEAN & FULKERSON, P.C., Troy, Michigan, Timothy R. Winship, THE WILLIAMS FIRM, P.C., Grand Blanc, Michigan, Jeffrey C. Gerish, CRAWFORD & COMPANY, Bloomfield Hills, Michigan, for Appellees. Mark F. Horning, STEPTOE & JOHNSON, Washington, D.C., for Amicus Curiae.

  MOORE, J., delivered the opinion of the court, in which COLE, J., joined. GIBBONS, J. (pp. 30–38), delivered a separate dissenting opinion.

1

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  The plaintiffs, who were allegedly injured while working for Cassens Transport Company ("Cassens"), sought worker's compensation benefits under Michigan's Worker's Disability Compensation Act, Mich. Comp. Laws § 418.301 ("WDCA").  Crawford & Company, Cassens's third-party administrator, denied each plaintiff's benefits.  In response, the plaintiffs filed a complaint in the United States District Court for the Eastern District of Michigan, alleging that the denials were fraudulent and violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961(1)(B), 1962(c), and 1964(c) ("RICO"). The district court dismissed the lawsuit.

We hold that the Supremacy Clause prevents the Michigan legislature from preempting a RICO remedy by declaring its worker's compensation scheme to be exclusive of federal remedies.  An expected entitlement to benefits under the WDCA qualifies as property, as does the claim for such benefits, and the injury to such property creates, under certain circumstances, a RICO violation.  We therefore **REVERSE** the district court's judgment and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Paul Brown, William Fanaly, Charles Thomas, Robert Orlikowski, and Scott Way were injured allegedly while performing work-related tasks for their employer, Cassens.[1]  Cassens is self-insured and contracts with Crawford, a claims adjudicator, to resolve worker's compensation claims brought by Cassens's employees.  Dr. Saul Margules evaluated all of the plaintiffs except Thomas.  According to the complaint,

---

[1] Gary Riggs has withdrawn his claims because he signed a release that "clearly and unequivocally covers and releases the claims he asserts in this action." *Brown v. Cassens Transp. Co.* (*Brown IV*), 743 F. Supp. 2d 651, 653 n.1 (E.D. Mich. 2010).  Riggs had originally received benefits that later were terminated.  R. 1 (Compl. ¶ 48).

Cassens and Crawford solicited fraudulent medical reports from Dr. Margules and other physicians. Dr. Margules is "not an expert in orthopedic conditions," which most injuries on the job involve. R. 1 (Compl. ¶ 37). He was also alleged to be "biased due to the amount of money defendants paid him over the years to examine Cassens workers and to testify against them." *Id.* The plaintiffs assert that Cassens and Crawford ignored other medical evidence that supported the plaintiffs' claims. The plaintiffs allege that the conspiracy was orchestrated by mail or by wire. The claims of each plaintiff except Brown were "resolved by settlement" before the Worker's Compensation Appellate Commission ("WCAC") rendered a final determination. Reply Br. at 23. Cassens denied Brown's claim, a magistrate granted Brown full benefits, and Cassens appealed. Brown's claim was decided on its merits by the WCAC. R. 1 (Compl. ¶ 39). Neither the briefs nor the complaint state how the WCAC resolved his claim.

On June 22, 2004, the plaintiffs sued Cassens, Crawford, and Dr. Margules (except that Thomas did not sue Dr. Margules), alleging violations of RICO and intentional infliction of emotional distress. Each plaintiff seeks monetary "damages measured by the amount of benefits improperly withheld . . . , plus interest as provided by law, all tripled in accordance with RICO, together with attorney fees and costs as provided by law." R. 1 (Compl. ¶¶ 21, 29, 46, 65, 74). The district court dismissed the case under Federal Rule of Civil Procedure 12(b)(6) for failure to allege reliance on the defendants' fraudulent misrepresentations. *Brown v. Cassens Transp. Co.* (*Brown I*), 409 F. Supp. 2d 793 (E.D. Mich. 2005). A divided panel of this court affirmed. *Brown v. Cassens Transp. Co.* (*Brown II*), 492 F.3d 640 (6th Cir. 2007). The Supreme Court vacated our judgment and remanded the case in light of *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), which held that civil RICO plaintiffs do not need to demonstrate reliance on defendants' fraudulent representations. *Brown v. Cassens Transp. Co.*, 554 U.S. 901 (2008). On remand, we held that the plaintiffs had pleaded a "pattern" of unlawful activity. We also held that the McCarran-Ferguson Act, 15 U.S.C. § 1012, did not reverse preempt RICO claims because the WDCA was not enacted to regulate the business of insurance and, in any event, RICO would not

"invalidate, impair, or supersede" the WDCA.  *Brown v. Cassens Transp. Co.* (*Brown III*), 546 F.3d 347, 363 (6th Cir. 2008), *cert. denied*, 130 S. Ct. 795 (2009).

On remand, the district court denied the plaintiffs' motion to amend their complaint and dismissed their claims under Rules 12(b)(6) and 12(c).  *Brown v. Cassens Transp. Co.* (*Brown IV*), 743 F. Supp. 2d 651 (E.D. Mich. 2010).  The district court determined that the WDCA provided an exclusive state remedy via the WCAC that foreclosed federal RICO claims; that monetary losses stemming from lost benefits were personal injuries that were not injury to business or property; and that the damages were too speculative to support standing.  The plaintiffs have appealed.

Meanwhile, three similar cases, all brought by one of the attorneys who represents the plaintiffs in this case, have been dismissed by various district judges.  *Lewis v. Drouillard*, 788 F. Supp. 2d 567 (E.D. Mich. 2011), *appeal docketed*, No. 11-1325 (6th Cir. Mar. 14, 2011) (held in abeyance by 6th Cir. Apr. 15, 2011, Order pending the resolution of *Jackson* and this case); *(Jay) Brown v. Ajax Paving Indus., Inc.*, 773 F. Supp. 2d 727 (E.D. Mich. 2011), *appeal docketed*, No. 11-1391 (6th Cir. Mar. 28, 2011) (held in abeyance by 6th Cir. June 6, 2011, Order pending resolution of this case); *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 09-11529, 2010 WL 931864 (E.D. Mich. Mar. 11, 2010), *appeal docketed*, No. 10-1453 (6th Cir. Apr. 4, 2010).

## II.  ANALYSIS

### A.  Standards of Review

We review de novo dismissals under Rules 12(b)(6) and 12(c).  *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011).  We construe the complaint in the light most favorable to the plaintiffs, accepting its allegations as true and drawing all reasonable inferences in the plaintiffs' favor.  *Id.*  To avoid dismissal, the plaintiffs must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Dismissal "may be granted only

if the moving party is . . . clearly entitled to judgment," even after taking as true the allegations of the nonmoving party. *Poplar Creek*, 636 F.3d at 240.

We also review de novo when a district court denies a motion for leave to amend a complaint on the basis that amendment would be futile. *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 569 (6th Cir. 2010).

## B.  Relationship Between RICO and the WDCA

> RICO makes it a crime "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  RICO defines "racketeering activity" to include "any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 [18 U.S.C. § 1341] (relating to mail fraud), section 1343 [18 U.S.C. § 1343] (relating to wire fraud)."  *Id.* § 1961(1).

*Brown III*, 546 F.3d at 352 (alterations and omissions in original).

The WDCA provides that employees who are injured in the course of employment "shall be paid compensation."  Mich. Comp. Laws § 418.301(1).  An injured employee receives payments beginning fourteen days "after the employer has notice or knowledge of the disability."  *Id.* § 418.801(1).  The WDCA purports to make "[t]he right to the recovery of benefits" under the WDCA "the employee's exclusive remedy against the employer for a personal injury or occupational disease," with the sole exception of "intentional tort[s]."  *Id.* § 418.131(1).

The parties argue at length about (a) whether the plaintiffs' RICO claims fall within the ambit of the WDCA, triggering its exclusive-remedy clause, and (b) whether RICO would impair the WDCA's regulatory scheme.  We find these debates irrelevant.  The plaintiffs brought a federal claim, not a WDCA claim.  Although we do not hold that RICO preempts the WDCA, we do find that "the relative importance to the State of its own law is not material" when "a valid federal law" provides a cause of action based on overlapping facts.  *Ridgway v. Ridgway*, 454 U.S. 46, 54 (1981) (internal quotation

marks and alteration marks omitted).  Therefore, the district court erred in finding that the WDCA forecloses the plaintiffs' RICO claims.

### 1.  Supremacy Clause

Although RICO's predicate of mail fraud is similar to the underlying fraud that affects a state-recognized interest, mail fraud is a distinct offense.  Due to the Supremacy Clause, Michigan does not have the authority to declare a state remedy exclusive of federal remedies.  *See* U.S. Const. art. VI, cl. 2; *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1105 (10th Cir. 1998) ("If Roadway means to argue that Colorado's Workers' Compensation Act provides the exclusive remedy for all work-related injuries including emotional distress caused by violations of the civil rights laws, that argument is readily disposed of by the Supremacy Clause."); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1190 (2d Cir. 1987) ("New York's Workers' Compensation Law might bar plaintiff's state common-law claim . . . [, but] we do not read the workers' compensation law to deny relief under a federal statute.  Were state law to erect such a bar, it would clearly run afoul of the Supremacy Clause . . . .").  State law can eliminate federal remedies only when authorized by reverse-preemption clauses, such as the one contained in the McCarran-Ferguson Act, which played a role in this panel's prior decision.  *Brown III*, 546 F.3d at 357.  Although the plaintiffs frame their argument in terms of preemption, the Supremacy Clause is relevant in this case only to decide whether *Michigan* can "foreclose[]" federal RICO claims, as the district court held.  *Brown IV*, 743 F. Supp. 2d at 668.  Regardless of whether RICO preempts the WDCA, RICO provides a distinct cause of action.

To contest this result, the defendants rely on *Connolly v. Maryland Casualty Co.*, 849 F.2d 525, 528 (11th Cir. 1988), *cert. denied*, 489 U.S. 1083 (1989).  The Eleventh Circuit held in *Connolly* that a plaintiff could not bring suit for civil rights violations under 42 U.S.C. § 1985 for injuries that stemmed from delayed payments of worker's compensation.  The court reasoned that, because "[t]he civil rights claims and constitutional claims are all based on the right provided by Florida Compensation Law," "[t]he remedy for th[e] wrongful conduct cannot rise above the exclusive remedy

provided by the Florida statutes." *Id.* Similarly, the entitlement to worker's compensation benefits is created by Michigan statutes. By analogy, specifying and limiting the remedy for violations of that entitlement arguably is Michigan's prerogative. More particularly, the defendants cite *Connolly* and *Prine v. Chailland Inc.*, 402 F. App'x 469, 470–71 (11th Cir. 2010) (unpublished opinion), *cert. denied*, 131 S. Ct. 2100 (2011), for the proposition that this court lacks subject-matter jurisdiction over RICO claims—that is, the allegations do not state a cognizable RICO claim—if the state court would decline to exercise jurisdiction over the plaintiffs' worker's compensation claims.

The flaw with the defendants' argument is that the predicate offense for the RICO action is mail fraud, not the denial of worker's compensation. "The gravamen of [a] RICO cause of action is not the violation of state law, but rather certain conduct, illegal under state law, which, when combined with an impact on commerce, constitutes a violation of federal law. Therefore, it is not alleged that [the defendants are] subject to 'liability under' the [state law]; their liability . . . stems from RICO." *Williams v. Stone*, 109 F.3d 890, 895 (3d Cir.), *cert. denied*, 522 U.S. 956 (1997). The district court here erred when it stated that this case does not "involve[] a separate and independent tort (theft or conversion or some similar claim)" because the plaintiffs "cannot disentangle their RICO claim from their underlying claim for benefits." 743 F. Supp. 2d at 666, 668. Admittedly, the plaintiffs are entitled to damages for the alleged fraud only if they were actually entitled to worker's compensation and were not properly compensated, which is a question of state law. But this fact shows an overlap in sanctioned conduct, not a dependency relationship between state and federal law. It is well established that "[t]he fact that a scheme may violate state laws does not exclude it from the proscriptions of the federal mail fraud statute." *Parr v. United States*, 363 U.S. 370, 389 (1960). It follows that mail fraud is still criminal even when the existence of fraud varies according to whether a state prohibits conduct or whether it affords entitlements.[2] *United States v. Blandford*, 33 F.3d 685, 702 (6th Cir. 1994) (affirming

---

[2]State law is not the exclusive source for defining fraudulent activity. *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1313 (11th Cir. 2000) ("[T]he fact that no duty . . . can be located in analogous [state] cases does not mean that no such duty can be located in federal law.").

a mail-fraud conviction by distinguishing a case with identical conduct because one state proscribed the defendant's action while the other state did not), *cert. denied*, 514 U.S. 1095 (1995). Thus, mail fraud is a sanctionable offense even when it resembles a state tort. For these same reasons, this court has jurisdiction over the federal civil RICO claim even if the Michigan courts would not hear a claim for worker's compensation. A federal civil RICO claim and a state claim for worker's compensation are legally distinct, even though they share factual underpinnings.

### 2. Federal Administrative Schemes and the Filed-Rate Doctrine

Courts have held RICO inapplicable to claims that should have been raised before *federal* agencies that had exclusive-remedy clauses in their enabling statutes. *E.g., McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1226–27 (11th Cir. 2002) (Higher Education Act); *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 521–22 (11th Cir. 2000) (National Traffic and Motor Vehicle Safety Act); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 486–87 (7th Cir. 1990) (Social Security Act). The district court extended this logic to *state* agencies. However, enabling statutes for federal agencies shed light on Congress's intent with regard to RICO because Congress passed both sets of statutes. In contrast, enabling statutes for state agencies, passed by state legislatures, say nothing about Congress's intent with regard to RICO. Michigan cannot limit the scope of a federal RICO cause of action.

Anticipating this critique, the defendants collect cases in which courts prevented plaintiffs from bringing RICO claims that would have interfered with *state* administrative agencies. The defendants fail to mention that most of these cases apply the filed-rate doctrine. The filed-rate doctrine insulates from judicial attack utility rates that have been filed with a state or federal regulatory agency, even when the plaintiffs allege that the rates are unreasonable due to "fraud upon the regulatory agency." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 20 (2d Cir. 1994); *see also Keogh v. Chi. & Nw. Ry. Co.*, 260 U.S. 156 (1922); *Wah Chang v. Duke Energy Trading & Mktg. LLC*, 507 F.3d 1222, 1225–26 n.4 (9th Cir. 2007); *Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503 (5th Cir. 2005), *cert. denied*, 546 U.S. 1091 (2006); *Sun City*

*Taxpayers' Ass'n v. Citizens Utils. Co.*, 45 F.3d 58 (2d Cir.), *cert. denied*, 514 U.S. 1064 (1995); *H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485 (8th Cir.), *cert. denied*, 504 U.S. 957 (1992); *Taffet v. So. Co.*, 967 F.2d 1483 (11th Cir.) (en banc), *cert. denied*, 506 U.S. 1021 (1992).   Asking this court to apply the doctrine to the context of worker's compensation, the defendants identify a common policy concern:  "only by determining what would be a reasonable rate absent the fraud could a court determine the extent of the damages."  *Wegoland Ltd.*, 27 F.3d at 21.  Similarly, only by knowing whether the plaintiffs were entitled to worker's compensation could a court determine the extent of the damage produced by the defendants' fraud.  Additionally, without the filed-rate doctrine, "victorious plaintiffs [in utility rate suits] would wind up paying less than non-suing ratepayers," *id.*, just as victorious plaintiffs in this case would wind up recovering more than injured workers who do not bring a RICO suit.

The filed-rate doctrine, however, has not been extended to any other context.  To the contrary, some cases have criticized its continuing validity even within the field of utility rates.  *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 760 F.2d 1347, 1352–55 (2d Cir. 1985) (Friendly, J.), *aff'd*, 476 U.S. 409 (1986).  Crucially, a key justification for the filed-rate doctrine is the need for knowledgeable regulatory agencies to police "generally monopolistic and oligopolistic industries" to ensure reasonable rates, rather than leaving a rate-reasonableness calculation in the hands of the less knowledgeable courts. *Wegoland*, 27 F.3d at 21. This concern is less present in the field of worker's compensation where courts are regularly tasked with calculating the value of such injuries.   In addition, the filed-rate doctrine protects a legislative-type determination by a regulatory agency, whereas the Michigan exclusivity provision insulates an adjudicatory determination.  Agency expertise, while often justifying some measure of deference, never justifies a prohibition on our review—direct, much less indirect—of agency adjudications.  For these reasons, we decline to extend the filed-rate doctrine.

### 3. *Burford* Abstention

Had the complaint survived the motions to dismiss, the district court stated that it "would [have] stay[ed] Plaintiffs' RICO claims . . . based upon the *Burford* abstention doctrine. *Brown IV*, 743 F. Supp. 2d at 676 n.17. *Burford* abstention is a method by which federal courts may defer to the pending decision of a state agency when "the State's interests are paramount and . . . [the] dispute would best be adjudicated in a state forum." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996). When a complaint seeks only monetary damages, *Burford* abstention may justify a stay, though not a dismissal of the claims. *Id.* at 730. The decision whether to invoke *Burford* abstention is committed to the discretion of the court. *Id.* at 724–25. Here, none of the parties' current briefs even mention *Burford* abstention.[3] We therefore decline to exercise our discretion to stay the case.

All told, Michigan cannot preempt a federal RICO claim, and the resemblance of the federal RICO claim to the claim for a state entitlement does not undermine the RICO claim.

## C. Injury to Property

The district court also rejected the plaintiffs' claims because it held that they failed to allege an injury to property, as required by RICO. The district court viewed the plaintiffs' alleged injuries as "wholly derivative of their personal injuries," and as such they could not be injury to property. *Brown IV*, 743 F. Supp. 2d at 674. We fail to see support for the district court's position in the text of RICO, and we hold that the plaintiffs have alleged an injury to property because they allege the devaluation of either their expectancy of or claim for worker's compensation benefits.

---

[3]Moreover, it appears that the parties are no longer awaiting "a final determination of Plaintiffs' entitlement to those benefits via Michigan's workers' compensation scheme." *Brown I*, 409 F. Supp. 2d at 803. All of the claims settled except Brown's, Reply Br. at 23, which was decided on its merits. Appellant Br. at 35 n.11.

**1. Background**

Title 18 U.S.C. § 1964(c) entitles those who have been "injured in [their] business or property by reason of" racketeering, among other actions, to treble damages, costs, and fees.  Plaintiffs can recover under § 1964(c) only if they can demonstrate an injury to "business or property."  Shaping our analysis of this provision is the Supreme Court's instruction that "RICO is to be read broadly." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985).  The Supreme Court justified that rule in two ways.  First, Congress wrote the RICO statute with "self-consciously expansive language and overall approach." *Id.* at 498 (citing *United States v. Turkette*, 452 U.S. 576, 586–87 (1981)).  Second, Congress "express[ly] admoni[shed] that RICO is to 'be liberally construed to effectuate its remedial purposes.'" *Id.* (quoting Pub. L. No. 91-452, § 904(a), 84 Stat. 947).  The remedial purpose of RICO is "nowhere more evident than in the provision of a private action for those injured by racketeering activity." *Id.*

**2. Prior Panel Decision and Waiver**

At the district court, the plaintiffs' only argument about the nature of their injury was that *Brown III* held that they had alleged loss of property. *Brown IV*, 743 F. Supp. 2d at 671 n.15 (quoting Plaintiffs' Response to Cassens Mot. to Dismiss).  The plaintiffs are incorrect. *Brown III* stated:

> Each of the plaintiffs has also sufficiently pleaded that they were injured by the defendants' "pattern of racketeering activity" under 18 U.S.C. § 1964(c) because the defendants' fraud deprived the plaintiffs of worker's compensation benefits and caused them to incur attorney fees and medical care expenses.

*Brown III*, 546 F.3d at 355–56.  This sentence does not specifically state that the plaintiffs alleged an injury to *property*, an issue that was not before the panel in *Brown III*.

Nevertheless, this issue "presents an appropriate circumstance for exercising our discretion to reach an issue not raised below." *Lockhart v. Napolitano*, 573 F.3d 251, 261 (6th Cir. 2009).  "Ordinarily, an issue that is not raised in the district court is not

considered on appeal unless the question is presented with sufficient clarity and completeness for us to resolve the matter without further development of the record." *United States v. Lucas*, 640 F.3d 168, 173 (6th Cir. 2011). This issue is presented with clarity and completeness. The district court relegated waiver to a footnote and analyzed the merits of the issue for four pages. All of the parties have briefed the issue at length, and it is "purely a question of law." *Lockhart*, 573 F.3d at 261. We therefore consider whether the plaintiffs have alleged an injury to property.

### 3. State or Federal Law

Whether a person has a "property" interest is traditionally a question of state law. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) ("The hallmark of property . . . is an individual entitlement grounded in state law."). For that reason, "'[i]njury to property' for RICO purposes is generally determined by state law." *Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 397 (6th Cir. 1999) (citing *DeMauro v. DeMauro*, 115 F.3d 94, 96 (1st Cir. 1997)). The Sixth Circuit has never fleshed out the circumstances in which state law is not determinative of whether someone has a property interest at stake, but *DeMauro* suggests that federal law can constrict state definitions of property, and we agree with that approach. "[O]ne might expect federal law to decide whether a given interest, recognized by state law, rises to the level of 'business or property,'" a question that "depends on federal statutory purpose." *DeMauro*, 115 F.3d at 96; *see also Evans v. City of Chicago*, 434 F.3d 916, 930 n.25 (7th Cir. 2006) ("[W]e need not adopt a state law definition of 'business or property' which is so broad that it contravenes Congress' intent in enacting the RICO law."); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("[E]ven though courts may look to state law to determine, for RICO purposes, whether a property interest exists, it does not follow that any injury for which a plaintiff might assert a state law claim is necessarily sufficient to establish a claim under RICO."); *cf. Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005) (invoking the same rule when deciding whether property is protected under the Due Process Clause). We therefore must ask both whether Michigan defines the interest at

stake as property and whether such a definition is consistent with the concept of "property" that Congress protected in enacting RICO.

### 4. Devaluation of a Statutory Expectancy as Injury to Property

The complaint identifies the plaintiffs' injuries as including the deprivation and devaluation of worker's compensation benefits. R. 1 (Compl. ¶ 17). The district court held that the fraudulent deprivation or diminution of worker's compensation benefits did not amount to an injury in property because such injury is merely another form of pecuniary loss stemming from a physical injury. *Brown IV*, 743 F. Supp. 2d at 674. Because statutory entitlements are property, the injury to which causes harm, we see no reason under RICO to distinguish between property entitlements that accrue as a result of a personal injury from those that do not. Although none of the remaining plaintiffs in this case had started receiving their statutory benefits at the time of the fraud, Michigan's nondiscretionary worker's compensation scheme creates a property interest in the expectancy of statutory benefits following notice to the employer of injury. Finally, even if Michigan law does not create a property interest in such an expectancy, we hold that the plaintiffs' *claim* for benefits is an independent property interest, the devaluation of which also creates an injury to property within the meaning of RICO.

### a. Property Interest in Worker's Compensation Benefits

As an initial matter, both Michigan law and federal law recognize that the recipient of a statutory entitlement "has a statutorily created property interest in the continued receipt of those benefits." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 60 (1999) (citing *Goldberg v. Kelly*, 397 U.S. 254, 262 & n.8 (1970)); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Logan*, 455 U.S. at 428; *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Williams v. Hofley Mfg. Co.*, 424 N.W.2d 278, 282, 283 n.16 (Mich. 1988) (relying on federal due process law articulated in *Logan*, 455 U.S. at 428). A recipient of Michigan worker's compensation benefits undoubtedly has a property interest under state law in the continued receipt of those benefits. We hold

today that injury to such statutory entitlements is an injury to property within the meaning of RICO.[4]

Congress provided in 18 U.S.C. § 1964(c) that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." The statute offers no further guidance on the meaning of "business or property." When faced with interpreting similar language in the context of the Clayton Act, the Supreme Court acknowledged that the inclusion of the word "business" works to narrow the definition of "property" from its otherwise naturally broad meaning. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979). "Congress must have intended to exclude some class of injuries by the phrase 'business or property.'" *Id.* at 339. This construction is equally applicable to the language in RICO. For example, money is a species of property under state law, but to hold that all monetary losses are covered by RICO would render the word "business" superfluous. Therefore, whereas damage to a building is an obvious property injury, purely pecuniary losses are sometimes indicative of property injury and sometimes not, depending on whether the pecuniary loss is to a legal entitlement—i.e., property. *See id.* at 340 ("[T]he fact that petitioner [] was deprived of only money, albeit a modest amount, is no reason to conclude that she did not sustain a 'property' injury.").

Against this backdrop, the Sixth Circuit has held that "[r]ecovery for physical injury or mental suffering is not allowed under civil RICO because it is not an injury to business or property." *Fleischhauer v. Feltner*, 879 F.2d 1290, 1300 (6th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990); *see also Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 644 (6th Cir. 1986); *Evans v. City of Chicago*, 434 F.3d 916, 930–31 (7th Cir. 2006); *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir.), *cert. denied*, 488 U.S. 981 (1988). The Supreme Court similarly excluded recovery for purely personal injuries under the Clayton Act, as such injuries are not inherently injury to any entitlement we would deem

---

[4]We recognize that the present case no longer involves plaintiffs who were awarded benefits that were later revoked. However, because our analysis requires examining whether RICO differentiates between benefits arising from personal injuries and those that did not, we start with the simpler question of whether a plaintiff with vested worker's compensation benefits has a property interest in those benefits, because the legal entitlement is more widely accepted.

property. *Reiter*, 442 U.S. at 339. Any pecuniary losses proximately resulting from a personal injury caused by a RICO violation, e.g. attorney fees, lost wages, and medical expenses, are also not recoverable because they, too, do not implicate harm to any legal entitlement.[5]

The defendants, the district court, and the dissent all focus on language in these cases rejecting pecuniary losses "flowing from" personal injuries to argue that any pecuniary losses downstream from a personal injury are categorically personal in nature and unrecoverable under RICO. *See, e.g.*, *Evans*, 434 F.3d at 926. In doing so, they skip over the first and most fundamental question at issue—has any legal entitlement been harmed. They are correct that "but for" the personal injury, the plaintiffs here would have had no interest in any benefits. But there is nothing in the text of RICO or the cases they point to that provides for ignoring damage to an intervening legal entitlement because it arose following a personal injury. The defendants ask us to be the first circuit to read RICO as preventing recovery for injuries to property "by reason of" a RICO violation solely because the property interest itself would not have existed but for an unrelated personal injury. We decline to take this approach for three reasons.

First, a plain reading of the text of RICO provides no support for excluding certain categories of property interests based on how the interest itself originated. Recognizing statutory entitlements as property under RICO does not render any term of the act superfluous. *See Reiter*, 442 U.S. at 338–39. Nor does the text reject recovery for certain legal entitlements because they accrued following a personal injury wholly unrelated to the RICO offense at issue. Congress's only other express limitation is that the injury to property must be "by reason" of a § 1962 violation; the text narrows recovery based on the origin of the *injury*, not the origin of the property. Based on the plain language of § 1964, we see no reason to exclude statutory entitlements to worker's

---

[5]The Circuits are less consistent when the injury claimed as a result of the RICO violation includes lost wages, but this is in part because some states do recognize a legal entitlement to employment opportunities. *Compare Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc) (lost wages from wrongful death caused by RICO violation may be properly pleaded as a property interest given California law) *with Evans v. City of Chicago*, 434 F.3d 916, 930–31 (7th Cir. 2006) (lost wages from wrongful incarceration caused by RICO violation not property interest given Illinois law).

compensation benefits—which are recognized as property under state law—from the category protected by RICO.

Second, focusing on the predicate injury that gave rise to the property interest ignores the Supreme Court's instruction to interpret RICO broadly. Section 1964 places "no restrictions . . . on the words 'injured in his property.' The statute does not limit standing to those 'directly injured in his property,' or 'injured only in his property.'" Comment, Patrick Wackerly, *Personal Versus Property Harm and Civil RICO Standing*, 73 U. Chi. L. Rev. 1513, 1520–21 (2006). "To the contrary, the language reads that 'any' injured party has standing to sue." *Id.* The Supreme Court has repeatedly refused to graft additional requirements onto the plain language of both this statute and the identical language in the Clayton Act when doing so would defeat Congress's intent that the statute have broad and inclusive application. *See Reiter*, 442 U.S. at 339 (rejecting argument that Clayton Act requires injury to commercial property interests); *Sedima, S.P.R.L.*, 473 U.S. at 497 (rejecting argument that RICO applies only to organized crime). The dissent urges a narrow reading of the word "property," but points to nothing in the text of RICO or statements of Congress to justify that approach. Because Congress intended us to interpret RICO broadly, *Sedima, S.P.R.L.*, 473 U.S. at 497, we see no reason to preclude RICO suits that are based on injury to property, not the predicate physical injury that gave rise to the property interest in the first place.

Third, such an approach would yield inconsistent results. The defendants do not argue statutory entitlements or claims to benefits generally are not property under RICO, but they argue such interests "may be RICO 'property' only when the wrong to be vindicated by the cause of action is an injury to business or property." Appellee Cassens Br. at 26 (capitalization omitted).[6] Such an approach would have us hold that a plaintiff

---

[6] The main cases cited by the defendants for this proposition do not support their argument. The Third Circuit in *Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 353–54 (3d Cir. 1986), *aff'd on other grounds by* 483 U.S. 143 (1987), recognized that causes of action were a species of property and harm to one could also be an injury to business when the action arose out of the termination of a business. Subsequent Third Circuit cases have held some causes of action are not property if the state itself would not treat the cause of action as a property interest. *See Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 226–27 (3d Cir. 2007) (unpublished opinion). Here, the parties do not dispute that Michigan treats a cause of action over worker's compensation benefits as property. *Williams v. Hofley Mfg. Co.*, 424 N.W.2d 278, 282, 283 & n.16 (Mich. 1988).

could recover under RICO for the fraudulent devaluation of welfare benefits, which do not arise following a personal injury, but not for the fraudulent devaluation of worker's compensation benefits, solely because the latter do. A plaintiff could recover for the loss of a cause of action for wrongful termination, but not for the loss of a cause of action for wrongful death. Nothing in the text of RICO evinces an intent by Congress to draw such arbitrary distinctions among property interests, nor do we find any support for the exclusion of these claims from the protections of RICO. Such an approach is incompatible with RICO because it qualifies the term "property" without a basis to do so in the RICO statute. *See Reiter*, 442 U.S. at 338–39 (rejecting interpretation of "business or property" as "business or business property"). Classifying property interests according to their origins creates untenable distinctions.

The dissent makes the same mistake that the district court did by misconstruing the meaning of language from our sister circuits that "pecuniary losses *flowing from* [personal] injuries" are insufficient to establish injury to property. *Evans*, 434 F.3d at 930 (emphasis added); *see also Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir.), *cert. denied*, 488 U.S. 981 (1988). Neither of these cases involved an injury to an intervening legal entitlement. Both addressed whether various damages that were the proximate result of a personal injury caused by a RICO violation, albeit some more indirectly than others, could be deemed property interests *on their own*. *Evans*, 434 F.3d at 930 (lost wages from wrongful incarceration caused by alleged RICO violation not property); *Grogan*, 835 F.2d at 846–47 (economic losses from wrongful death caused by alleged RICO violation not property). We take no issue with their holdings that they could not. *Evans* even left open the possibility that a plaintiff might be able to "recover under RICO for loss of an employment opportunity" if "an employee is able to establish that he has been unlawfully deprived of a property right in promised or contracted[-]for wages." 434 F.3d at 928. The *Evans* court did not say it would permit recovery for such a property deprivation "*only if the promise of wages did not arise following a physical*

*injury at work.*"[7] Such a scenario involving harm to an intervening legal entitlement, separating the physical injury from the downstream pecuniary losses, would be more factually analogous to this case than the actual facts of *Evans* are. Focusing on whether pecuniary losses "flowed" in some way from a personal injury does not make sense in cases involving the devaluation of an actual legal entitlement as the result of an independent RICO fraud.

### b.        Property Interest in Expectation of Worker's Compensation Benefits

Having determined that the devaluation or loss of a statutory entitlement is an injury to property, we must next decide whether the plaintiffs in this case had accrued such a legal entitlement. None of the remaining plaintiffs in this case had started receiving any worker's compensation benefits under Michigan law at the time of filing their RICO action. The issue is, therefore, whether an injured employee obtains a property interest in his *expectancy* of worker's compensation benefits. Again, we look first to Michigan law.

Michigan has not directly addressed at what point an injured employee has a property interest in the benefits provided by the WDCA. In construing other statutes, Michigan courts have held that "a unilateral expectation of [a statutory] benefit" before the benefit is awarded is not property because the claimant must "have a legitimate claim of entitlement to the funds." *City of St. Louis v. Mich. Underground Storage Tank Fin. Assurance Policy Bd.*, 544 N.W.2d 705, 708–09 (Mich. Ct. App. 1996) (citing *Williams*, 424 N.W.2d 278). However, that principle originates in federal due process law.[8] *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). And when interpreting federal due process law, "[e]very regional circuit to address the question," including the Sixth Circuit, "has

---

[7]The *Evans* court also distinguished *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (en banc), in part because under Illinois law, prospective employment was not a cognizable property right, whereas under California law it was. 434 F.3d at 930 n.26.

[8]Michigan often looks to federal due process law in analyzing whether property interests are at stake. *Williams v. Hofley Mfg. Co.*, 424 N.W.2d 278, 282, 283 n.16 (Mich. 1988) (relying on federal due process law articulated in *Logan*, 455 U.S. at 428).

concluded that applicants for benefits, no less than benefits recipients, may possess a property interest in the receipt of public welfare entitlements," *Cushman v. Shinseki*, 576 F.3d 1290, 1297 (Fed. Cir. 2009), so long as "a statute mandates the payment of benefits to eligible applicants based on objective, particularized criteria," *Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 639–40 (4th Cir. 1996); *see also Hamby v. Neel*, 368 F.3d 549, 559 (6th Cir. 2004); *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996).[9]

Federal due process law therefore recognizes a property interest in benefits that have not yet been awarded if the party asserting the property entitlement can "point to some policy, law, or mutually explicit understanding that both confers the benefits and limits the discretion of the [other party] to rescind the benefit." *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005) (internal quotation marks omitted); *see also Castle Rock*, 545 U.S. at 756 ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). Michigan law is consistent with this approach. For example, the Michigan Supreme Court has held that a bar owner with a liquor license has a property interest in his expectancy of receiving a renewal license, independent of his interest in his existing license, despite having had no property interest in his expectancy of an initial license in the first place. *Bundo v. City of Walled Lake*, 238 N.W.2d 154, 160 (Mich. 1976). The Michigan Supreme Court focused entirely on the differences in the statutory procedures for obtaining a renewal license as compared to an initial license. An initial applicant for a liquor license must obtain approval from the local legislative body *before* the license may be granted; the initial applicant therefore has nothing more than a unilateral expectation or hope that he may receive the license. An existing licensee need not obtain such approval; unless an

---

[9] "The Supreme Court has repeatedly reserved decision on the question of whether *applicants* for benefits (in contradistinction to *current recipients* of benefits) possess a property interest protected by the Due Process Clause." *Kapps v. Wing*, 404 F.3d 105, 115 (2d Cir. 2005). Nevertheless, "the Supreme Court's procedural due process jurisprudence focuses on whether statutory provisions create a right, not whether benefits have been received in the past." *Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 640 (4th Cir. 1996) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "[T]he potential consequences of denying . . . benefits are no less potentially dire than those of revoking them." *Id.*

objection by the local body is filed prior to thirty days before his license expires, renewal "take[s] place as a matter of course." *Id.* at 157, 161.

Applying this principle to the present context, we look to the statutory procedures for obtaining worker's compensation in Michigan and conclude that applicants for worker's compensation benefits have a property interest in those benefits at the time that their employer becomes aware of the injury. The WDCA's mandatory language deprives the WCAC of discretion about whether to award benefits. The statute says that employees injured in the course of employment "*shall* be paid compensation," which is calculated according to a rigid schedule. Mich. Comp. Laws § 418.301(1) (emphasis added). In the context of the WDCA, there is no "well established tradition" of government officials having "discretion" despite "apparently mandatory . . . statutes." *Castle Rock*, 545 U.S. at 760. In fact, no adjudication is required: an employee receives worker's compensation benefits fourteen days "after the employer has notice or knowledge of the disability." Mich. Comp. Laws § 418.801(1). Applicants therefore acquire a property interest in worker's compensation when employers learn of their employees' physical injuries. The property interest has an "ascertainable monetary value" and the identity of the entitlement is neither indeterminate nor vague. *Castle Rock*, 545 U.S. at 763. These features demarcate a property interest guaranteed by the mandatory language of the WDCA.

The dissent argues that the employer's statutory ability to dispute the payment of benefits negates any claim of legal entitlement to benefits prior to a decision to award them.[10] As an initial matter, both the dissent and the district court misread Michigan Compiled Laws § 418.801(2) as permitting the nonpayment of otherwise mandatory

---

[10]The defendants make a similar argument, pointing to Michigan cases with language suggesting the employee's "entitlement" to benefits does not begin until after the employee meets his burden of proof under the WDCA. *See, e.g.*, *Stokes v. Chrysler L.L.C.*, 750 N.W.2d 129, 143–44 (Mich. 2008) ("There is no way of knowing whether claimant is entitled to benefits until the correct legal standards have been applied, and these standards cannot be applied until the claimant has introduced evidence concerning his wage-earning capacity."); *Rakestraw v. Gen. Dynamics Land Sys., Inc.*, 666 N.W.2d 199, 205 (Mich. 2003) ("[A]n employee must establish the existence of a work-related injury by a preponderance of the evidence in order to establish entitlement to benefits."). These cases are cited out of context on issues regarding respective burdens when benefits are disputed under the WDCA, Mich. Comp. Laws § 418.851, and not whether a plaintiff has a property interest in his expectancy of benefits. We therefore do not find their use of the word "entitlement" persuasive on this distinct issue.

weekly compensation in the event of an ongoing dispute. It does not. Subsection (2) relieves an employer of an otherwise automatic *penalty* for the non-payment of the benefits owed under the statute in the event of an ongoing dispute.[11] But even if it did relieve the employer of its obligation, the existence of a limited mechanism to dispute the receipt of benefits otherwise awarded as a matter of course does not make the expectation cease to be a property interest.[12] In *Bundo*, 238 N.W.2d at 160–61, for example, the Michigan Supreme Court deemed it of no consequence that the local legislative body retained a statutory right to object to renewal of a liquor license.

The absence of a specific statutory provision authorizing an employer not to pay compensation during a dispute also distinguishes this case from *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 58–61 (1999). In *American Manufacturers*, the Supreme Court held that claimants of worker's compensation benefits in Pennsylvania did not have a property interest in the payment of benefits prior to an adjudication that the medical treatments for which they sought compensation were "reasonable and necessary." *Id.* at 61. In 1993, Pennsylvania had amended its worker's compensation laws to insert a procedure by which an employer could require a review of the necessity of an employee's treatments "before a medical bill must be paid." *Id.* at 45. The Supreme Court held that under the new regime, it was no longer enough that the plaintiffs demonstrated their "initial *eligibility* for medical treatment" because they had not overcome the second statutory hurdle of showing "that the particular medical treatment they received was reasonable and necessary." *Id.* at 61.

---

[11]The cases cited by the district court also address only the nonpayment of the penalty set forth in subsection (2) in the event of an ongoing dispute. *See Warner v. Collavino Bros.*, 347 N.W.2d 787 (Mich. Ct. App. 1984); *Richardson v. Gen. Motors Corp.*, 363 N.W.2d 22 (Mich. Ct. App. 1984); *Couture v. Gen. Motors Corp.*, 335 N.W.2d 668 (Mich. Ct. App. 1983). The WDCA does not spell out what impact a dispute has on subsection (1)'s requirement that the employee "shall" be compensated. However, given that an employer suffers no penalty from refusing to pay disputed claims, as was the case here, it seems the practical effect of the statute is that employers who dispute claims do not pay them until ordered to do so.

[12]Otherwise a party could *never* be denied benefits, even for proper grounds, which is clearly not the case. The ability of an employer to dispute an otherwise nondiscretionary claim of benefits, and such employer's potential success, impacts only the value of the employee's claim to benefits, not the determination that such an expectancy of benefits is the employee's property in the first place.

The injured employees therefore could not yet claim a property interest in their expectation of benefits. *Id.*

Here, the underlying Michigan state law does not require injured employees to make such an initial showing *before* they receive benefits, as Pennsylvania's law did. In contrast, Michigan law resembles the old Pennsylvania regime, stating simply that "[a]n employee[] who receives a personal injury arising out of and in the course of employment by an employer . . . *shall be paid compensation* as provided in this act." Mich. Comp. Laws § 418.301(1) (emphasis added); *see* 77 Pa. Stat. Ann. § 531(5) (Purdon Supp. 1978) ("The employer shall provide payment for reasonable . . . services rendered . . . as and when needed."). Although an employee bears the burden of showing his personal injury arose during the course of his employment in the event of a dispute, Mich. Comp. Laws § 418.851, no Michigan statutory provision permits the employer to withhold compensation until such a showing has been made.

Where, as here, the receipt of the benefit is nondiscretionary and statutorily occurs as a matter of course, we firmly believe that the Michigan courts would recognize a property interest in an injured employee's expectancy of worker's compensation. And, as already discussed, because a property interest in the form of entitlement to benefits is consistent with "property" as defined by RICO, the plaintiffs have properly stated a claim alleging injury to property when they alleged harm to their expectancy of statutory benefits under the WDCA.

### c. Property Interest in Claim for Worker's Compensation Benefits

Independently of our analysis thus far, we also hold that the plaintiffs in this case have a property interest in their claim for benefits. Therefore, even if Michigan courts would *not* recognize an expectancy of benefits under the WDCA as property, the plaintiffs in this case may proceed by alleging injury to property in that their *claim* to benefits under the worker's compensation scheme was damaged by the defendants' actions. *American Manufacturers* specifically reserved judgment on whether an applicant has "a property interest in . . . *claims* for payment, as distinct from the payments themselves." *Am. Mfrs.*, 526 U.S. at 61 n.13 (emphasis added). The holding

was limited to the expectation of *payment* of worker's compensation (i.e., mailing a particular check), not the *claim* for payment (i.e., entitlement to present a claim). Had the defendants in *American Manufacturers* barred the plaintiffs from following the statutory procedures for presenting a claim at all, the result would very likely have been different.

Michigan law describes a cause of action for worker's compensation as a "species of property"—for both the plaintiff and the defendant. *Williams v. Hofley Mfg. Co.*, 424 N.W.2d 278, 282, 283 & n.16 (Mich. 1988) (citing *Logan*, 455 U.S. at 428). Although the dissent is correct that the plaintiff in *Williams* had already been awarded worker's compensation, unlike here, the relevant interest at issue was not the employee's expectancy in benefits but whether an employer had a property interest in a worker's compensation cause of action such that a failure to afford the employer adequate process in such a proceeding injured his property. The court held that it was property. Here, the plaintiffs' claim is not necessarily about particular payments themselves, but also about the defendants' deception before the WDCA that deprived the plaintiffs of the ability to assert their claim for benefits under the statute in a fair forum.[13] We hold that Michigan would recognize *a claim* for worker's compensation benefits as a species of property independently of whether the employee had obtained an interest yet in the underlying benefits themselves. And as discussed throughout, we see no reason to exclude injuries to causes of action, which are indisputably injuries to property, from the category identified by Congress as "property" in RICO.

Finally, the defendants are correct that worker's compensation is "a substitute for the tort system." *Brown II*, 546 F.3d at 359. That does not mean, however, that claims for worker's compensation sound in tort. When a plaintiff's personal injury is filtered through the WDCA, it is converted into a property right.

---

[13]The plaintiffs' complaint is ambiguous as to which property interest they believe was harmed—their expectancy or their claim. This should be considered on remand as part of the plaintiffs' motion to amend their complaint.

#### d.  Effect of Settlement and Unfavorable Adjudication

Attacking the plaintiffs from another angle, the defendants claim that the plaintiffs "were not deprived of their causes of action" because the plaintiffs pursued the claims to resolution, be it by settlement or by final adjudication.  Appellee Cassens Br. at 28.  This argument mischaracterizes the plaintiffs' property interest.  The plaintiffs did not lose the ability to litigate their claims entirely, but the value of their claims was allegedly diminished because of the fraud.

Of course, the plaintiffs' RICO action can succeed only by proving that the plaintiffs suffered an ascertainable injury from the defendants' fraud.  To do that, they must show that their claims to benefits had value, i.e., the claims had some likelihood of success had they been able to present them in a fair proceeding.  This is similar to legal malpractice cases, where the plaintiffs also allege injury to an underlying claim, and Michigan requires plaintiffs to prove a "suit within a suit"—in other words, that they could have prevailed or obtained a better outcome in the original lawsuit.  *Coleman v. Gurwin*, 503 N.W.2d 435, 437 (Mich. 1993) (internal quotation marks omitted).  This requirement "insure[s] that the damages claimed to result from the attorney's negligence are more than mere speculation."  *Id.*  Losing or settling the original lawsuit does not, on its own, render the injury speculative.  To the contrary, damages are generally quantified counterfactually.  *See, e.g.*, *Chronister Oil Co. v. Unocal Ref. & Mktg.* (*Union Oil Co. of Cal.*), 34 F.3d 462, 464 (7th Cir. 1994) (Posner, J.) ("The point of an award of damages, whether it is for a breach of contract or for a tort, is, so far as possible, to put the victim where he *would have been* had the breach or tort not taken place." (emphasis added)).

The same logic is true here; losing or settling a case due to fraudulent medical reports does not extinguish the plaintiffs' property interest in bringing a claim free of fraud.  It would be nonsensical to allow a plaintiff to sue her attorney for malpractice only if she had won the suit in which the malpractice occurred, even though she must still put on evidence that she would have won absent her attorney's malpractice.  Likewise, here, plaintiffs should be allowed to proceed on their RICO claim and put on

evidence that they would have received a better result in the underlying state agency proceedings had the defendants not submitted fraudulent medical reports. The fact that the plaintiffs lost or settled in tainted proceedings is not evidence that the plaintiffs would have lost or settled if the proceedings had been fair.

Raising an argument that goes to the merits of the adjudication, the defendants dispute whether the plaintiffs were injured on the job. *Cf.* Mich. Comp. Laws § 418.841(1) ("Any dispute or controversy concerning compensation . . . shall be submitted to the [WCAC] . . . ."). This argument relates only to damages, however, and not whether plaintiffs had a property interest in a fraud-free adjudication of their claims. Even if a person cannot ultimately satisfy the criteria to receive the statutory entitlement, she still has a property interest in her statutory right to raise the claims and be subject to a fair proceeding on the merits of her claims.

We hold that the plaintiffs have a property interest in their claims for worker's compensation benefits, and the favorable or unfavorable adjudication or settlement of those claims in a proceeding tainted by fraud does not extinguish their property interest in those benefits. The plaintiffs, then, have alleged an injury to property.

### 5. Damages

Under 18 U.S.C. § 1964(c), prevailing plaintiffs are entitled to treble damages and costs of the RICO suit, including reasonable attorney fees. Because of the trebling of damages, courts do not permit RICO claims to proceed unless the measure of damages is "not based upon mere speculation and surmise." *Fleischhauer v. Feltner*, 879 F.2d 1290, 1299–1300 (6th Cir. 1989). The district court here held that the damages in this case would be too speculative to give the plaintiffs standing to pursue a RICO claim. Although many of the arguments with respect to this issue have already been addressed, we will discuss briefly why damages here are appropriately quantifiable.

In the context of the Clayton Act, "a consumer . . . is injured in 'property' when the price of those goods or services is artificially inflated by reason of the anticompetitive conduct complained of." *Reiter*, 442 U.S. at 339. By analogy, a person

is injured in "property" under RICO when the value of the statutory benefits that she receives is artificially decreased by reason of the fraud complained of. "[T]he compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern." *Sedima, S.P.R.L.*, 473 U.S. at 497. Calculating such differences is rarely an exact science, but the plaintiffs should be able to put on proof of how much compensation they would have received under the WDCA's rigid schedule of compensation but for the defendants' allegedly fraudulent medical testimony. The difference between that amount and the amount they received in settlement is neither speculative nor too difficult to surmise.

The WDCA calculates a compensatory award using detailed instructions and tables set forth in Michigan Compiled Laws §§ 418.301 *et seq.*, plus, after payments are 30 days late, $50 per day (capped at $1,500) for each subsequent day on which the employer fails to pay in the absence of an ongoing dispute. *Brown III*, 546 F.3d at 362 (quoting Mich. Comp. Laws § 418.801(2)). The damages alleged in this case are (1) either the denied benefits, or the amount by which the settlement reduced the award to which the plaintiff would have been entitled but for the inducement to settle, R. 117–2 (Amended Compl. ¶ 46) ("damages measured by the amount of benefits improperly withheld"); (2) costs incurred due to the "time delay in receipt of those benefits," *id.*; (3) attorney fees and litigation costs of litigating the claim in the state system, *id.*; and (4) expenses from "mileage to and from medical care," *id.* The plaintiffs also request interest pertaining to each item. *Id.*

Because the plaintiffs have alleged a specific, ascertainable injury to property within the meaning of RICO, they are entitled to pursue these damages.

**D.  Adequacy of the Pleadings**

The plaintiffs have plausibly alleged an "enterprise" and Dr. Margules's role in its "operation or management." For purposes of RICO, "an enterprise includes any union or group of individuals associated in fact," elsewhere described as "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, —, 129 S. Ct. 2237, 2243 (2009) (internal

quotation marks omitted). Such an association must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 2244. The requirements are interpreted flexibly. For example, members do not need to hold fixed roles, and a chain of command is not required. *Id.* at 2245.

### 1. Allegations of "Enterprise"

"[A] corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise. . . . [A] corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members."[14] *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 781 (6th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001). This principle is known as the "non-identity" or "distinctness" requirement. *Id.* Also, a plaintiff may plead in the alternative and "the pleading is sufficient if any one of [the theories that the plaintiff pleads] is sufficient." Fed. R. Civ. P. 8(d)(2).

The alleged enterprise consists of Cassens and Crawford, or Cassens, Crawford, and Dr. Margules. R. 1 (Compl. ¶ 20). Crawford and Cassens can comprise an enterprise on their own because Crawford "act[ed] as an agent for, *or in concert with*, Cassens." R. 1 (Compl. ¶ 18) (emphasis added). Moreover, the plaintiffs' allegations suggest that Dr. Margules is a distinct actor with whom the other defendants have "a long-standing business relationship." *Id.* ¶ 11; *see also* Appellee Margules Br. at 29 ("[The complaint] establishes that Dr. Margules was in practice for himself."). Therefore, the allegations satisfy the distinctness requirement.

Moreover, the complaint meets *Twombly*'s plausibility standard. The complaint alleges that the "Defendants expressly or implied[ly] communicated to Dr. Margules that [they] wanted him to write reports stating plaintiff was not disabled due to work-related

---

[14]Contrary to the defendants' argument, there is no requirement that the plaintiffs explicitly allege that "Cassens is a person." The complaint clearly alleges that Cassens violated § 1962(c), implying that Cassens is a "person" capable of violating that section.

injuries, regardless of the true circumstances." R. 1 (Compl. ¶ 12). Thus, the plaintiffs have plausibly pleaded the existence of an "enterprise."

### 2. Dr. Margules's Role

The plaintiffs have adequately alleged Dr. Margules's involvement in the operation or management of the enterprise. *Reves v. Ernst & Young* held that, although liability is not limited to "upper management," a person can be liable under RICO only if he or she is part of the "operation or management" of the enterprise. 507 U.S. 170, 185 (1993). The defendants in *Reves* were not part of the operation of the enterprise because they simply prepared standard financial statements "based on information from management's accounting system." *Id.* at 186. Dr. Margules, on the other hand, allegedly did more than participate in his "*own* affairs" of evaluating medical conditions. *Id.* at 184–85. According to the complaint, Dr. Margules's evaluations were not objective medical reports. Dr. Margules was a "'cut off' doctor . . . upon whom Crawford and Cassens could rely for opinions which they could cite as grounds for cutting off or denying benefits." R. 1 (Compl. ¶ 6B). He allegedly fraudulently slanted his medical evaluations to serve the purposes of the enterprise, with "the express or implied promise of future payment of money." *Id.* Therefore, the complaint adequately alleges that Dr. Margules was part of the operation or management of the enterprise.

### E. Leave to File an Amended Complaint

Courts should "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a). When a complaint, as amended, could not survive a motion to dismiss, a district court does not err in denying the motion to amend. *Owens Corning*, 622 F.3d at 574. Because we conclude that the amended complaint could survive the motion to dismiss, denial of the motion to amend for reason of futility was in error. We leave to the district court the question whether justice requires letting the plaintiffs amend their complaint.

## III.  CONCLUSION

We **REVERSE** the district court's judgment and **REMAND** the case for further proceedings consistent with this opinion.

———————————

**DISSENT**

———————————

JULIA SMITH GIBBONS, Circuit Judge, dissenting**.**  Because I disagree with the majority's analysis and conclusions in section II.C. of the opinion and because this issue is dispositive, I respectfully dissent.  The district court recognized several grounds on which the plaintiffs' case could be dismissed, and in order to affirm the decision of the district court, our panel need only have agreed with one of them.  The plaintiffs failed to state a claim for RICO relief because they neglected to plead an injury to business or property, and, thus, the district court's dismissal of plaintiffs' case should be affirmed.[1]

Plaintiffs' alleged RICO damages are that they were deprived of workers' compensation benefits and incurred attorneys' fees, medical-care expenses, and transportation expenses driving to and from medical care.  The district court held that plaintiffs lack standing to sue under RICO because their claims for medical expenses and related pecuniary loss sustained as a result of their workplace injuries do not constitute injury to business or property under RICO.  *Brown v. Cassens Transp. Co.* ("*Brown IV*"), 743 F. Supp. 2d 651, 658 (E.D. Mich. 2010).  Because plaintiffs' damages "unquestionably were incurred as a direct result of Plaintiffs' on-the-job injuries," the district court concluded that "their medical expenses, workers' compensation benefits, medical mileage and attorneys fees are damages which are indisputably wholly derivative of their personal injuries and as such are not injuries to 'business or property' under RICO." *Id.* at 674.  I agree.

As recognized by the majority, RICO provides recovery for "[a]ny person injured in his *business* or *property* by reason of a violation of section 1962 of this chapter . . . ." 18 U.S.C. § 1964(c) (emphases added).  Thus, without an allegation of damages to business or property by reason of a violation of § 1962, plaintiffs will not have standing to pursue their RICO claims.  Although the Supreme Court has stated "RICO is to be

_____

[1] I agree with the majority opinion's determination that *Brown III* did not deal with this issue and that we should decide it here.

read broadly" in determining what injuries were actually caused by conduct that RICO was designed to deter (*i.e.*, racketeering injuries), *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985), (Maj. Op. at 10), this does not eliminate the requirement to plead an injury to business or property. "'The phrase business or property . . . retains restrictive significance. It would, for example, *exclude personal injuries suffered*.'" *Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 644 (6th Cir. 1986) (internal quotation marks omitted) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)) (affirming district court's denial of a motion to amend a complaint). Furthermore, this restrictive significance has been clarified to exclude both personal injuries *and* pecuniary losses flowing from those personal injuries. *Evans v. City of Chicago*, 434 F.3d 916, 926 (7th Cir. 2006); *see also Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992) ("The terms 'business or property' are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom."); *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988) ("[T]he pecuniary and non-pecuniary aspects of personal injury claims are not so separated . . . ; rather, loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering are often to be found, intertwined, in the same claim for relief.").

At the outset, it is necessary to examine what law determines whether an injury constitutes a personal injury or an injury to business or property. "While federal law governs most issues under RICO, whether a particular interest amounts to property is quintessentially a question of state law." *Doe*, 958 F.2d at 768 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)). But our court is "not required to adopt a state interpretation of 'business or property' if it would contravene Congress' intent in enacting RICO." *Id.* (citing *Reconstruction Fin. Corp. v. Beaver Cnty.*, 328 U.S. 204 (1946)). "Some role does exist for state law. There is no general federal law of property transfers . . . ." *DeMauro v. DeMauro*, 115 F.3d 94, 96 (1st Cir. 1997). Nonetheless, "[w]here to set the 'business or property' threshold depends on federal statutory purpose, and that purpose is likely to support a definition that is uniform throughout the country." *Id.* at 96–97. The task of the court is "to determine whether

Congress intended the damages that plaintiffs seek in this case to be recoverable under civil RICO." *Grogan*, 835 F.2d at 846.

The majority indeed recognizes this legal framework. It then, however, concludes that Michigan's definition of property is consistent with Congress's intent, while engaging in little discussion of that Congressional intent, and relies on Michigan procedural due process jurisprudence to determine whether plaintiffs' allegations state a claim under RICO. Overlooking or minimizing the federal cases does not merely reject the helpful analogies they offer; it also results in an interpretation of RICO's standing requirement that departs from both Congressional language and intent.

Plaintiffs alleged that, after they were each injured at work, Cassens and Crawford formed an enterprise and fraudulently denied plaintiffs' claims for benefits under the WDCA through Notices of Dispute (in which Crawford challenged the validity of the claims as being unsupported by medical evidence or not job-related), opinion letters sent by Dr. Margules (opining that the alleged injury was not job-related or not sufficiently disabling), and additional communications in furtherance of the scheme. *Brown IV*, 743 F. Supp. 2d at 656. Based on this activity, plaintiffs' alleged damages were that they were deprived of workers' compensation benefits and incurred attorneys' fees, medical care expenses, and mileage to and from medical care providers. *Id.* at 658.

The majority discusses extensively whether an expectation of workers' compensation benefits constitutes a property interest. This approach ignores the determinative fact that the damages sought in worker's compensation cases derive from personal injuries. Under RICO, both personal injuries *and* pecuniary losses flowing from those personal injuries are insufficient to confer standing under § 1964(c). *See Evans*, 434 F.3d at 926; *see also Grogan*, 835 F.2d at 846–47. The injury to plaintiffs is not the loss of an opportunity to assert a claim, in which there might or might not be

a property interest, but the personal injury for which success on the claim would compensate.[2]

The majority opinion also departs from precedents of our sister circuits. These precedents provide useful examples of damages that compensate for personal injury and those that compensate for injury to property or business interests under RICO. *See Evans*, 434 F.3d at 926–27 (finding that malicious prosecution and false imprisonment resulting in loss of potential income and attorneys' fees were personal injuries because, under Illinois law, these claims are traditional tort claims resulting in personal injuries and pecuniary consequences of those personal injuries); *Doe*, 958 F.2d at 770 (finding that loss of earnings, purchase of a new security system, and employment of a new attorney were derivative of emotional distress resulting from defendant's sexual encounters with plaintiff and therefore reflected personal injuries that were not compensable under RICO); *Grogan*, 835 F.2d at 848 (holding that plaintiffs could not recover under RICO "for those pecuniary losses that are most properly understood as part of a personal injury claim," in this instance, personal injuries inflicted by predicate physical injury or death and the lost employment opportunities that result); *Drake*, 782 F.2d at 644 (finding that a wrongful death action—based in an employer's concealment of hazards associated with working in an environment containing vinyl chloride—constituted a personal injury action rather than an injury to business or property). *But see Diaz v. Gates*, 420 F.3d 897, 898, 900–01 (9th Cir. 2005) (*en banc*) (*per curiam*) (concluding that plaintiff had alleged an injury to business or property resulting from false imprisonment by alleging "lost employment, employment opportunities, and the wages and other compensation associated with said business, employment and opportunities, in that [he] was unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated"); *Evans*, 434 F.3d at 928 ("Where an employee is able to establish that he has been unlawfully deprived of a property right in promised or contracted for wages, the courts have been

---

[2]The majority opinion asserts that focusing on the origin of the injury may yield inconsistent results. But the statutory language delineates the inquiry, which requires an examination of the origins of an injury. Thus, I would characterize the inconsistency the majority describes as the natural result of the Congressional definition of injuries within the statute's reach.

amenable to classifying the loss of those wages as injury to 'business or property.'"). Thus, the cases from other circuits support the defendants' arguments that pecuniary damages flowing from plaintiffs' work-related injuries constitute personal injuries, not damages to property or business.

Many of these circuit cases also explain that Congress intended RICO's standing requirement—which again allows plaintiffs to sue for injuries only to business or property losses—to have real teeth. *See Evans*, 434 F.3d at 928 ("[A]lthough the economic aspects of Evans' alleged loss of employment income injury could conceivably be regarded as affecting 'business or property,' Congress specifically foreclosed this possibility by adopting the civil RICO standing requirement and its 'restrictive significance' from the Clayton Act."); *id.* at n.23 ("[I]t would be contrary to the intent of Congress for this court to construe the statute *so broadly* that we completely read the 'restrictive significance,' of the 'business or property' standing requirement out of [the statute].") (internal citation omitted); *Grogan*, 835 F.2d at 845 ("The words 'business or property' are, in part, words of limitation; if Congress had intended for the victims of predicate acts to recover for all types of injuries suffered, it would have drafted the statute [differently].").   Congress's clear desire to limit standing to those who suffer business- or property-related losses makes sense, given that "Congress enacted civil RICO primarily to prevent organized crime from obtaining a foothold in legitimate business." *Doe*, 958 F.2d at 768; *see also Grogan*, 835 F.2d at 845.   What does not make sense, however, is to believe that Congress intended to thwart such criminal activity by recognizing a civil action to recover medical expenses and related losses due to a denial of worker's compensation benefits.

In addition, federal district courts have persuasively determined that the sort of damages sought here are for personal injury, not for injury to business or property. *See Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 645–47 (S.D. Tex. 2007), *summarily aff'd*, 337 F. App'x 397 (5th Cir. 2009); *Brown v. Ajax Paving Indus.*, 773 F. Supp. 2d 727, 734 (E.D. Mich. 2011); *Lewis v. Drouillard*, 788 F. Supp. 2d 567, 570–71 (E.D. Mich. 2011).  In the Southern District of Texas, the federal district court

evaluated a "claim that Defendants 'conspired to defraud [the plaintiffs] of their common law right to file intentional tort claims against their employer for the injuries they suffered' in [an explosion]." *Bradley*, 527 F. Supp. 2d at 645. "Defendants allegedly 'paid large monetary settlement awards to certain union officials . . . for intentional tort claims outside of [plaintiff's] alleged workers' compensation plan' . . . ." *Id.* The court found that the plaintiffs' "RICO claim in no way implicates their 'business or property'" because "[t]he claim solely seeks to redress for personal injuries suffered in the [explosion]." *Id.* at 647. The "viable personal injury causes of action" failed to "constitute an injury cognizable under RICO." *Id.* The court recognized that "the economic consequences of personal injuries do not qualify as 'injury to business or property'" and "at least one court has expressly held that 'a lost opportunity to bring state law personal injury claims . . . is not cognizable as an injury to business or property in a civil RICO action.'" *Id.* at 646 (internal quotation marks omitted) (citing *Magnum v. Archdiocese of Phila.*, 253 F. App'x 224, 226 (3d Cir. 2007)). The court then emphasized that this "position is entirely consistent with the legislative purpose of the RICO statute." *Id.* (internal quotation marks omitted).

Furthermore, two district courts have recently come to the same conclusion with respect to workers' compensation claims under the WDCA in the state of Michigan. These decisions have been stayed on appeal pending our decision in this case. As one court concluded,

> there is no question that the damages identified in Plaintiff's complaint—diminished worker's compensation benefits, losses resulting from the delayed payment of benefits, medical expenses, and costs and attorney fees incurred in an effort to secure the benefits to which Plaintiff allegedly was entitled—all stem from an underlying personal injury that led Plaintiff to pursue an award of worker's compensation benefits.

*Ajax*, 773 F. Supp. 2d at 734 (internal citation omitted). That underlying injury involved an injury to plaintiff while on the job; plaintiff was then examined by a board-certified orthopedic surgeon who opined that plaintiff's injury was work-related; plaintiff's employer denied plaintiff's claim for workers' compensation benefits; plaintiff sought review of this denial; and plaintiff alleged that his employer attempted to bribe witnesses

to testify falsely that plaintiff's injury occurred outside of work. *Id.* at 730. The court in *Ajax* agreed with the district court in the case at bar and found that this allegation was insufficient for a RICO action. Furthermore, the court reasoned that the "'lost cause of action' theory of civil RICO damages" was sufficient only when "the 'lost' suit is itself an injury to 'business or property.'" *Id.* at 736. Additionally, in *Lewis*, the court noted, "While it is true that employers or their insurance carriers are required by law to pay workers' compensation benefits when warranted, the injuries suffered by workers while on the job have never lost their characteristic as personal injuries." 788 F. Supp. 2d at 570 (citing *Mathis v. Interstate Motor Freight Sys.*, 289 N.W.2d 708 (Mich 1980); *Specht v. Citizens Ins. Co. of Am.*, 593 N.W.2d 670 (Mich. Ct. App. 1999)). The court found that "Plaintiffs' alleged damages [were] intimately related to their personal injuries," and they did "not have standing under RICO." *Id.*

Finally, our panel previously referred to the WDCA as a "public regulation of the employment relationship that is a substitute for the *tort* system rather than any contractual relationship between employees and employers." *Brown v. Cassens Transp. Co.* ("*Brown III*"), 546 F.3d 347, 359 (6th Cir. 2008) (emphasis added). The workers' compensation scheme "creates a legislative remedy regarding the tort-liability relationship . . . ." *Id.* at 360. Our statement is consistent with case law analyzing the intentions of RICO. Given the strong body of case law supporting the notion that plaintiffs' damages allege only personal injuries, I would conclude the plaintiffs have not pled an injury to business or property, as required under RICO.

The majority chooses to ignore most of the case law supporting the result reached by the district court. Instead, citing *Williams v. Hofley Manufacturing Co.*, 424 N.W.2d 278 (Mich. 1988), the majority concludes that Michigan law establishes that a claim for workers' compensation benefits constitutes a property interest. In *Williams*, the court concluded that a money judgment rendered in litigation would deprive the defendant employer of its property, and "the United States Supreme Court has held that a cause of action is, in itself, a species of property protected by the Fourteenth Amendment's Due Process Clause." *Id.* at 282 (citing *Logan*, 455 U.S. at 428). "Thus, to the extent that the

procedure involved would affect the ability of the defendant to present a legitimate defense, the defendant's property rights are also impaired." *Id.* at 282–83. *Williams*, however, is inapt because it involves an already-decided, legitimate claim of entitlement. That is not the case here. Indeed, it appears that, after the initial denial of benefits, all the plaintiffs but Brown have entered into settlements disposing of their workers' compensation claims. Resolved claims hardly represent legitimate claims of future entitlement.

The majority also argues that because the workers' compensation scheme provided for under the WDCA deprives the WCAC of discretion over whether to award benefits, those benefits are essentially guaranteed and constitute legitimate claims of entitlement. Indeed, the WDCA provides for the automatic payment of weekly compensation installments to a person with a disability claim after the employer has notice or knowledge of the disability. Mich. Comp. Laws § 418.801(1). However, weekly compensation is no longer due and payable when there is an "ongoing dispute." *See* Mich. Comp. Laws § 418.801(2). An employer can place a claim in dispute by filing a "Notice of Dispute." Michigan state courts have held that no distinction is to be made among good faith disputes, bad faith disputes, and unreasonable disputes. *See Warner v. Collavino Bros.*, 347 N.W.2d 787, 790 (Mich. Ct. App. 1984) ("On its face M.C.L. § 418.801(2) . . . merely requires an 'ongoing dispute' and does not distinguish good faith disputes from bad faith or unreasonable disputes."); *Couture v. Gen. Motors Corp.*, 335 N.W.2d 668, 670 (Mich. Ct. App. 1983) ("We cannot read the term 'dispute' in either statute to mean only a meritorious or nonfrivolous dispute."). Thus, although the payment of benefits remains nondiscretionary, payment is not inevitable under the WDCA. In the case at hand, plaintiffs attempted to receive workers' compensation benefits under the WDCA. Due to allegedly false medical reports and other wrongdoing, those benefits were denied. In order to regain a legitimate claim of entitlement, the WDCA provides an appellate process by which to challenge the dispute over benefits. *See* Mich. Comp. Laws §§ 418.841(1), 418.847(1), 418.859a(1), 418.861. Although wrongdoing had been alleged in conjunction with that denial, the denial of benefits still

exists, and the denial of benefits in no way approximates an "already-decided, legitimate claim of entitlement."  Thus, *Williams* provides little help to plaintiffs' position.

For the foregoing reasons, I respectfully dissent.  I would affirm the decision of the district court.