OPINION
KAREN NELSON MOORE, Circuit Judge.
Clifton Jackson and Christopher Scharnitzke are former employees of Coca-Cola Enterprises (“Coca-Cola”) who claim that they were injured while performing their jobs. When they reported their injuries to Coca-Cola’s third-party administrator for worker’s compensation claims, Sedgwick Claims Management Service (“Sedgwick”),[1] Sedgwick denied them both bene *473 fits. The plaintiffs claim that the medical evidence strongly supported their injuries, but that Sedgwick engaged in a fraudulent scheme involving the mail — and in the case of Jackson using Dr. Drouillard as a “cutoff’ doctor — to avoid paying benefits to injured employees. The plaintiffs sued in federal court alleging that the actions of Sedgwick, Coca-Cola, and Dr. Drouillard violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961(1)(B), 1962(c), and 1964(c) (“RICO”). The district court dismissed the lawsuit.
Since the district court’s dismissal, several issues on this appeal were resolved by our opinion in Brown v. Cassens Transport Co., 675 F.3d 946 (6th Cir.2012) (“Brown II”). We also disagree with the district court’s application of the elements of a RICO cause of action to the plaintiffs’ allegations in the complaint. We therefore REVERSE the district court’s judgment and REMAND the case for further proceedings consistent with this opinion.
I. BACKGROUND
Clifton Jackson was employed by Coca-Cola when he allegedly injured his lumbosacral spine at work in September 2007. R. 2 (Am.Compn 31A) (Page ID #39). Jackson was treated at the Henry Ford Hospital by Dr. Shlomo Mandel, a specialist in the lower back. Dr. Mandel determined that the work-related injury rendered Jackson disabled. In May 2008, Sedgwick requested a second opinion by Dr. Terry Weingarden, an expert paid for by the defendants. Dr. Weingarden also determined that Jackson was disabled from a work-related injury. Id. Sedgwick asked Dr. Weingarden to review Jackson for a second time, and Dr. Weingarden again determined that Jackson was disabled. Id.
After obtaining three reports confirming Jackson’s disability, in January 2009, Sedgwick mailed a letter to Jackson requesting yet another examination, this time by Dr. Paul Drouillard. Id. (Page ID # 40). Plaintiffs allege that Dr. Drouillard is not a back surgeon and was hired by Sedgwick as a “cut-off’ doctor to provide false medical reports and participate in a scheme dishonestly to deprive Coca-Cola employees of their statutory benefits under the Michigan Worker’s Disability Compensation Act (“WDCA”), Mich. Comp. Laws § 418.301. Id. at ¶¶ 12, 13, 15, 31. After Jackson met with Dr. Drouillard, Dr. Drouillard mailed a report to Sedgwick stating that Jackson was not disabled. Dr. Drouillard’s report contains three statements by Jackson regarding the scope of his pain that Jackson claims he never made and several conclusions about the nature of Jackson’s physical injury that Jackson claims are wholly unsupported by the medical evidence. Id. at ¶ 31A. Sedgwick relied on this report to terminate Jackson’s benefits.
Christopher Scharnitzke was employed as a truck driver when he allegedly injured his shoulder because of, he claims, extensive lifting at work. He ceased working from August 2007 to February 2008 due to the injury, but did not seek worker’s compensation for that time. Id. at 31B (Page ID # 41-42). From 2004 to 2007, on three separate occasions, he reported to his family doctor that he experienced left shoulder pain while doing heavy lifting at work. In August 2007, Dr. Marc Milia, an orthopedic surgeon, observed similar pain from the work Scharnitzke was performing. The doctor performed an MRI and diagnosed Scharnitzke with “acromioclavicular arthritis.” Dr. Milia treated Scharnitzke and authorized him to return to work in February 2008.
*474 Scharnitzke continued to work until March 4, 2008, when he experienced “instant pain” in his left shoulder while pulling a 300-pound two-wheeler cart of product up a flight of stairs. He was sent to the company’s clinic, Concentra Medical Center, that same day. Id. (Page ID # 42). On March 11, 2008, the Concentra doctor, observed that Scharnitzke had a “minor work aggravation” and a “chronic shoulder problem.” Id. (Page ID #43). The Concentra records concluded that Scharnitzke was disabled due to his shoulder condition and referred Scharnitzke back to his orthopedic surgeon. The records were sent to Sedgwick, which then mailed a notice of dispute claiming that his March treatment was not related to a work injury but was instead due to “acromioclavicular arthritis.” Id. Scharnitzke alleges that Sedgwick had no information at that time to suggest his March injury was related to arthritis and not the “minor work aggravation” indicated in the Concentra records, which should have entitled him to worker’s compensation. Id.
Sedgwick and Coca-Cola continued to deny Scharnitzke benefits after receiving numerous updates from Dr. Milia about the nature of Scharnitzke’s injuries. In April 2009, Sedgwick received a note from Dr. Milia, Scharnitzke’s orthopedic surgeon, clarifying that “[h]is current shoulder disability ... was caused by the 13 years of repetitive heavy lifting and pulling required by Mr. Scharnitzke’s job at Coca-Cola, and was also caused by the injury at work on 3/3/08.” Id. (Page ID # 44). After receiving Dr. Milia’s note, Sedgwick continued to deny Scharnitzke benefits.
Scharnitzke and Jackson both filed petitions for benefits with Michigan’s Workers’ Compensation Agency Board of Magistrates (the “Board”). We were informed at oral argument that Jackson settled his benefits claim shortly after the district court dismissed his RICO suit. On May 13, 2010, the Board awarded Scharnitzke benefits starting from the injury in March 2008 until July 2009, but found no evidence that his prior leave from July 30, 2007 to February 11, 2008, was work related. Scharnitzke v. Coca-Cola Enters., Inc. (May 13, 2010), available online at http:// www.dleg.state.mi.us/W CA/PDFS/ 0pinions_051409/2010/scharnitzke. christopher.5.13.10.pdf. The Workers’ Compensation Appellate Commission affirmed in part and reversed in part, agreeing that Scharnitzke was entitled to benefits starting in March 2008 but only through January 2009. Scharnitzke v. Coca-Cola Enters., Inc., No. 10-0061 (May 11, 2011), available online at http://www. dleg.state.mi.us/ham/wcae/llpdfa/07400061. pdf. Both parties sought leave to appeal the decision before the Michigan Court of Appeals, which was granted on March 1, 2012. Scharnitzke v. Coca-Cola Enters., No. 304515 (Mich.Ct.App.). As of the time of filing, briefing appears completed but no decision has been issued.
In April 2009, Jackson and Scharnitzke filed suit together in the U.S. District Court for the Eastern District of Michigan seeking equitable and monetary relief under RICO. Jackson brought his claim against Sedgwick, Coca-Cola, and Dr. Drouillard; Scharnitzke sued just Sedgwick and Coca-Cola. The plaintiffs amended their complaint once as of right to include a request for class certification. R. 2 (Am. Compl. at 22) (Page ID # 45). They later sought leave to file a second amended complaint adding another plaintiff, Paul Lulek, who also wanted to sue Sedgwick and Dr. Drouillard, identifying additional predicate acts of mail fraud, and adding a claim of RICO conspiracy. See R. 44-1 (2d Am.Compl.lffl 30A, 31, 31C). Meanwhile, the defendants filed a motion to dismiss.
*475 The district court granted the defendants’ motions to dismiss and denied leave to amend the complaint on the basis of futility. Jackson v. Sedgwick, Claims Mgmt. Servs., Inc., No. 09-11529, 2010 WL 931864 (E.D.Mich. Mar. 11, 2010). The district court held that the plaintiffs’ claims could be dismissed on the basis of three alternative grounds: (1) RICO does not provide a remedy that is functionally an “ ‘end run’ around the exclusive procedures and remedies” provided for under the WDCA; (2) the plaintiffs’ claims were not ripe; and (3) the plaintiffs failed to state a cognizable RICO claim. Jackson, 2010 WL 931864, at *14. The district court also determined that if the plaintiffs had stated a valid RICO claim, the Bur/ord-abstention and primary-jurisdiction doctrines would require staying the federal proceedings pending the outcome of the plaintiffs’ claims before the state Board. Jackson and Scharnitzke timely appealed.[2]
II. RICO CLAIM
A. Standard of Review
We review de novo the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir.2011), cert. denied, — U.S. -, 132 S.Ct. 1583, 182 L.Ed.2d 172 (2012). To satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)(2), the complaint “must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief.” Fed.R.Civ.P. 8(a)(2). In reviewing a complaint, we accept all the allegations of the plaintiff’s complaint as true and consider whether such allegations are sufficient to state a claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This standard requires “more than an unadorned, the-defendant-unlawfully-harmed-me accusation.” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). “A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.”[3] Id. (internal quotation marks omitted). A plaintiff must allege “enough facts to state a claim to relief that is plausible on its face.” Twombly, 550 U.S. at 570, 127 S.Ct. 1955.
Because RICO claims require proof of mail or wire fraud as an element, the plaintiffs must also satisfy the heightened particularity requirements of Federal Rule of Civil Procedure 9(b) with respect to the elements of fraud. “Rule 9(b) states that ‘[i]n alleging fraud or mistake, a party must state with paxrticularity the circumstances constituting fraud or mistake.’ ” Heinrich v. Waiting Angels Adoption Servs., Inc., 668 F.3d 393, 403 (6th Cir. *476 2012) (quoting Fed.R.Civ.P. 9(b)).[4] This includes alleging the “time, place, and content” of the fraudulent acts, the existence of a fraudulent scheme, the intent of the participants in the scheme, and “the injury resulting from the fraud.” Id. (internal quotation marks omitted).
B. Threshold Issues
Several issues in this case were recently resolved by our opinion in Brown II, 675 F.3d 946. We address these arguments, as well as the inapplicability of the Rook-er-Feldman doctrine and the various other abstention doctrines, before turning to the elements of a RICO claim and the sufficiency of the plaintiffs’ pleadings.
1. Relationship Between RICO and WDCA
The district court’s holding that RICO cannot provide a remedy for mail fraud in the context of obtaining worker’s compensation is untenable in light of our recent opinion in Brown II, 675 F.3d 946. In Brown II, we held that the Supremacy Clause preempts the Michigan legislature from eliminating a RICO remedy simply by declaring its worker’s compensation scheme to be exclusive of federal remedies.[5] “[T]he predicate offense for the RICO action is mail fraud, not the denial of worker’s compensation.” Id. at 954. It is therefore irrelevant whether the WDCA provides a state administrative remedy for addressing the fraudulent denial of worker’s compensation benefits. Nor does the existence of a state administrative scheme that does not provide for such a right of action trump the availability of remedies under RICO as it might in the context of a parallel federal administrative scheme. “[T]he fact that a scheme may violate state laws does not exclude it from the proscriptions of the federal mail fraud statute.” Id. at 954-55 (quoting Parr v. United States, 363 U.S. 370, 389, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (I960)). This is because “enabling statutes for state agencies, passed by state legislatures, say nothing about Congress’s intent with regard to RICO.” Id. at 955. Simply put, “Michigan cannot limit the scope of a federal RICO cause of action.” Id.
Some of the defendants’ arguments are slightly different than the ones we addressed in Brown II. Coca-Cola and Dr. Drouillard point us to 28 U.S.C. § 1445(c), which prohibits removing to federal court *477 civil suits “arising under the workmen’s compensation laws” of any state. However, even if § 1445(c) changes the analysis, this case was not removed under § 1445(c); therefore, the statute simply does not apply. In the ripeness portion of its brief, Coca-Cola imports the dear-statement rule from criminal RICO cases. Coca-Cola contends that “Congress must speak with special clarity before a federal statute may be construed in a manner that displaces a policy choice made by a State.” Appellee Coca-Cola Br. at 25 (internal quotation marks and alteration marks omitted). The cases that Coca-Cola cites, however, are concerned with the “sweeping expansion of federal criminal jurisdiction,” not civil. Cleveland v. United States, 531 U.S. 12, 24, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) (emphasis added). Furthermore, Cleveland held that state licenses are not “property” of the state within the meaning of the mail-fraud statute because the state’s interest is regulatory in nature. Id. at 22, 121 S.Ct. 365. As we discuss below, the state has created an entitlement to the property in question in the individual recipient.[6] Any lack of clarity about the mail-fraud statute as applied in Cleveland is simply not present in this case.
2. The Plaintiffs’ Injuries are Ripe
We held in Brown II that injured Michigan employees “acquire a property interest in worker’s compensation when employers learn of their employees’ physical injuries.” Brown II, 675 F.3d at 963. The fraudulent denial of these benefits causes injury to this property interest, and the value of the lost property interest is readily ascertainable — it is the value of the worker’s compensation that the plaintiff was entitled to receive under the WDCA’s scheme for calculating benefits. See Fleischhauer v. Feltner, 879 F.2d 1290, 1299 (6th Cir.1989) (RICO damages must be “established by competent proof, not based upon mere speculation and surmise”), cert. denied, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990); see also Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 265-68, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (requiring RICO violation proximately cause plaintiffs injuries). Because the injury occurs at the time of the fraudulent denial of benefits, the plaintiffs’ claims in this case were ripe at the time they filed their lawsuit. The district court therefore erred in determining that the plaintiffs’ injury is “conjectural and hypothetical” until they have proven their entitlement in state proceedings. Jackson, 2010 WL 931864, at *21 & n. 33, *22 & n. 34.
That is not to say that the state proceedings will be irrelevant; however, they will affect the amount of damages the plaintiffs are entitled to receive rather than the existence of the damages in the first place. By the time we issued our opinion in Brown II, all of the plaintiffs there had settled their worker’s compensation claims with their employer. In such cases, we stated that the primary damages would be *478 the difference between the amount the plaintiffs received in settlement and the amount they would have received but for the fraud. 675 F.3d at 967. This calculus remains applicable in this case because Jackson has also settled his claims. Scharnitzke, on the other hand, has already received a ruling that he is entitled to some benefits, a ruling which is being appealed. The outcome of that appeal may certainly be relevant on the amount of damages that Scharnitzke may receive in this case, but the possibility of future mitigation of damages does not make the injury itself less ripe at the time it occurred (or the total value of the damages less ascertainable).[7]
We acknowledge that one of our sister circuits currently disagrees with this approach. The Second Circuit has adopted a rule that RICO claims are not ripe “until the amount of damages becomes clear and definite.” First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768 (2d Cir.1994), cert. denied, 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995). But to the extent that this rule has been followed by other circuits, the focus has been on the speculative nature of the damages themselves and not their amount. See Evans v. City of Chicago, 434 F.3d 916, 932 (7th Cir.2006) (adopting standard but focusing on indirect nature of injuries rather than their amount); Maio v. Aetna, Inc., 221 F.3d 472, 495 (3d Cir.2000) (holding no RICO cause of action because factual predicate necessary for damages to be incurred at all too speculative); DeMauro v. DeMauro, 115 F.3d 94, 97-98 (1st Cir.1997) (adopting “clear and definite” standard but focusing on existence of damages in the first place).
Other circuits have simply declined to adopt this rule as overly rigid. Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc., 262 F.3d 260, 265 (4th Cir.2001) (“The best reading of § 1964(c)’s injury to business or property requirement is that it refers to the fact of injury and not the amount.”), cert. denied, 535 U.S. 927, 122 S.Ct. 1297, 152 L.Ed.2d 209 (2002); Grimmett v. Brown, 75 F.3d 506, 516-17 (9th Cir.1996) (holding “error to equate” a situation where “the injury is speculative because it is not known whether it will occur at all” to a situation where “the injury has occurred and is known, but it is speculative whether the damages might be reduced or even eliminated by alternative recovery efforts”), cert. dismissed, 519 U.S. 233, 117 S.Ct. 759, 136 L.Ed.2d 674 (1997); see also Liquidation Comm’n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339, 1350-51 (11th Cir.2008) (noting that even Second Circuit rule does not make a RICO injury unripe based solely on the “mere possibility” of recovery in a state proceeding); Paul A. Batista, Civil Rico Practice Manual § 4.22[D] (3d ed. 2008) (“[Gelt is] a case to which the Second Circuit rigidly adheres and which most other circuits tend to ignore or downplay.”).
As the Ninth Circuit noted, the Second Circuit’s “clear and definite” amount rule was taken from an earlier Second Circuit case that held that a plaintiffs claims were not ripe if the plaintiff might recover damages from a pending bankruptcy proceeding. Grimmett, 75 F.3d at 516 (citing Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1105 (2d Cir.1988)). Like the Ninth Circuit, we also have similar precedent directly contradicting that rule. In Isaak *479 v. Trumbull Savings & Loan Co., 169 F.3d 390 (6th Cir.1999), we held that the plaintiffs’ RICO claim accrued for statute of limitations purposes at the time the scheme was completed, because that was when the injuries became “ascertainable and definable.” Id. at 396-97. Citing Grimmett, we held that “[t]he possibility that Plaintiffs might have been able to recover some of the damages during the course of the bankruptcy proceedings does not negate the existence of injury at the time of the bankruptcy filing.” Id. at 397. We are not at liberty to depart from this precedent here today.
The plaintiffs’ injuries were definite and ascertainable at the time of the allegedly fraudulent denial of their benefits. Any speculative future recovery in state proceedings may affect the amount of damages the plaintiffs can receive, but has no bearing on the accrual of a cause of action under RICO. The plaintiffs’ claims are ripe.
3. Rooker-Feldman Doctrine
Dr. Drouillard argues that the Rooker-Feldman doctrine also justifies dismissing Jackson’s RICO claim because Jackson in essence will be challenging an unfavorable ruling by the state’s WDCA Board. Drouillard Appellee Br. at 44-47. This argument was raised, however, before Jackson settled his claims. Because there is no longer the potential of a state decision for Jackson to challenge, Rooker-Feldman has no potential applicability to Jackson. The remaining defendants have not raised the issue of Rooker-Feldman as a bar to Scharnitzke’s claims. However, because the doctrine relates to subject-matter jurisdiction, we briefly explain why the doctrine does not bar our review.
Rooker-Feldman applies to “cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced.” Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Put differently, “[t]he pertinent question ... is whether the source of the injury upon which plaintiff bases his federal claim is the state court judgment.” In re Squire, 617 F.3d 461, 465 (6th Cir.2010) (internal quotation marks omitted). Here, however, the source of the injury was the initial fraudulent denial of benefits. As we have already discussed at length both in this opinion and in Brown II, the source of the injury here is that fraudulent denial of benefits, not any future state-court judgment.
4. Abstention Doctrines
The district court held that, if the plaintiffs’ claims survived a motion to dismiss, it would stay the proceedings “pending a final determination of Plaintiffs’ eligibility for worker’s compensation benefits under the WDCA.” Jackson, 2010 WL 931864, at *14. Because Jackson’s claim has settled, abstention is no longer an issue for his claims. Scharnitzke was awarded benefits, and his claims are pending on appeal. For many of the reasons already discussed, however, abstention is not warranted in this case.
a. Burford Abstention
Federal courts may invoke Burford abstention when “the State’s interests are paramount and [the] dispute would best be adjudicated in a state forum.” Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (citing Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)). When a complaint seeks only monetary damages, the doctrine justifies a stay, not a dismissal. Id. at 719, *480 116 S.Ct. 1712. Burford abstention is not necessary here because the RICO inquiry does not present “difficult questions of state law” nor would it “be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.” Rouse v. DaimlerChrysler Corp. UAW Non-Contributory Plan, 300 F.3d 711, 716 (6th Cir.2002). This complaint seeks only monetary damages relating to mail fraud, not additional worker’s compensation. Burford abstention therefore does not apply.
b. Primary Jurisdiction
The primary-jurisdiction doctrine also does not apply here. The doctrine applies when “enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.” United States v. W. Pac. R.R. Co., 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). Because Jackson and Scharnitzke have a property interest notwithstanding the resolution of their underlying claims to worker’s compensation benefits, the primary-jurisdiction doctrine does not apply.
C. Elements of a RICO Claim
The district court also dismissed the plaintiffs’ claims for failing adequately to plead the many requirements that make up a RICO claim. We disagree.
1. Existence of an Enterprise
The plaintiffs’ complaint identified five potential RICO enterprises, each involving different combinations of the defendants. R. 2 (Am.ComplJ 9) (Page ID #26). The primary enterprise consisted of “[t]he workers compensation personnel at the workers compensation claims departments at Sedgwick and Coke, handling Michigan workers compensation claims and associating in fact,” including, among others, La Tara Lewis, the Sedgwick employee who mailed the request for a third medical examination to Jackson. Id. The alternative enterprises consisted of (1) Sedgwick’s personnel handling claims, (2) Sedgwick’s personnel and Dr. Drouillard, (3) Sedgwick’s and Coca-Cola’s personnel and Dr. Drouillard, (4) and any workers-compensation attorneys that participated in the fraud. Id. (Page ID #27). The plaintiffs pleaded that each of these enterprises, acting alone or in concert, existed “for the purpose of defrauding plaintiffs of their workers compensation benefits ... for many years.” Id. at ¶ 10.
The district court assumed that the pleadings adequately established an enterprise, although it deemed such a determination highly questionable in part due to the plaintiffs’ choice to plead six enterprises in the alternative. Jackson, 2010 WL 931864, at *23. Equivocation about the constitution of the enterprise, however, does not undermine the plausibility of the pleadings. “A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.” Fed.R.Civ.P. 8(d)(2); Jordan v. City of Cleveland, 464 F.3d 584, 604 (6th Cir.2006) (“Lawyers cannot preordain which claims will carry the day and which will be treated less favorably. Good lawyering as well as ethical compliance often requires lawyers to plead in the alternative.”).
A RICO “enterprise includes any union or group of individuals associated in fact ... for a common purpose of engaging in a course of conduct.” Boyle v. United *481 States, 556 U.S. 938, 944, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009). The association must have structure, meaning “a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise’s purpose.” Id. at 946, 129 S.Ct. 2237. Any one of the plaintiffs’ combinations of the defendants and various other parties would be sufficient to establish a RICO enterprise under this broad standard. The complaint sufficiently alleges the existence of multiple people acting in concert over a period of time with the purpose of perpetuating the RICO fraud. Brown II, 675 F.3d at 968.
2. Participation in the Enterprise
A RICO claim must sufficiently allege that the defendants each “con-duet[ed] or participate^], directly or indirectly, in the conduct of [an] enterprise’s affairs” to establish liability under 1962(c). Reves v. Ernst & Young, 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). The district court concluded that the plaintiffs had failed adequately to plead that either Coca-Cola or Dr. Drouillard sufficiently participated in the enterprise. According to the district court, the plaintiffs did not “allege non-conclusory facts to establish” that Coca-Cola and Dr. Drouillard engaged in “conduct connected to the operations or management of the enterprise,” a requirement for RICO claims. Jackson, 2010 WL 931864, at *24.
The allegations sufficiently establish Dr. Drouillard’s involvement in the enterprise for the same reasons we held that the allegations in Brown II sufficiently established the alleged cut-off doctor’s involvement in that case. Dr. Drouillard allegedly did more than just conduct his own affairs, as the district court held. Id. His “evaluations were not objective medical reports” and instead, he “allegedly fraudulently slanted his medical evaluations to serve the purposes of the enterprise.” Brown II, 675 F.3d at 968; see also R. 2 (Am. Compl. at ¶¶ 12-16) (alleging Dr. Drouillard was hired to “write cut off reports” for Coca-Cola and Sedgwick by reliably “stating a claimant did not have a work-related disability whether or not such disability actually existed”). Although the allegations are that Coca-Cola and Sedgwick made the ultimate decision to deny benefits, the allegations are sufficient to establish that Dr. Drouillard participated in the operation or management of the enterprise.
Coca-Cola also participated in the enterprise. The plaintiffs alleged that personnel in Coca-Cola’s worker’s compensation department worked with Sedgwick falsely to administer the claims by Coca-Cola employees. Id. at ¶ 9. Coca-Cola also routinely used and relied on the false medical reports of cut-off doctors such as Dr. Drouillard fraudulently to terminate benefits and regularly communicated with Sedgwick “concerning the desire of Coke and Sedgwick to obtain a [cut-off] report.” Id. at ¶ 13 (Page ID # 28). Coca-Cola with others then “misrepresented” to the plaintiffs through the use of the mail that the cut-off doctors were “independent.” Id. at ¶ 15 (Page ID # 29). While many options remain regarding the scope of Coca-Cola’s involvement, we do not agree with the district court that these allegations are “conclusory.” Jackson, 2010 WL 931864, at *24. As with Dr. Drouillard, Coca-Cola need not have handled the administration of the plaintiffs’ claims in order to be involved in the operational or management affairs of the enterprise. See Brown II, 675 F.3d at 968.
3. Pattern of Racketeering
To establish “a pattern of racketeering activity” under 18 U.S.C. *482 § 1962(c), the plaintiffs must show “at a minimum, two acts of racketeering activity within ten years of each other.” Heinrich, 668 F.3d at 409 (citing 18 U.S.C. § 1961). The plaintiff must also show that the predicate acts “are related, and that they amount to or pose a threat of continued criminal activity.” Id. (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 237-39, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). Here, the district court held that the plaintiffs had sufficiently alleged nine predicate acts of racketeering activity, but held that even if such acts were related, the plaintiffs failed to demonstrate a continued threat of criminal activity.
a. Predicate Acts
The district court considered both the Amended Complaint and the Proposed Second Amended Complaint and held that the plaintiffs have alleged with sufficient particularity nine predicate acts of mail fraud. Jackson, 2010 WL 931864, at *27. Even if we consider just the Amended Complaint, these acts included: (1) the mailing on or about July 22, 2008, by Coca-Cola and Sedgwick of a knowingly false notice of dispute of Scharnitzke’s benefits; (2) the mailing on January 6, 2009, by La Tara Lewis of Sedgwick to Jackson requesting an “independent” medical examination by Dr. Drouillard who was not in fact independent; (3) the mailing of a false medical report on or about January 14, 2009, by Dr. Drouillard to the state agency and by Sedgwick to Jackson. R. 2 (Am.Compl.1ffl 31A, 31B). We agree that each of these acts is alleged with sufficient particularity to constitute mail fraud under RICO. Heinrich, 668 F.3d at 403.
The defendants raise two arguments on appeal relating to the sufficiency of the individual predicate acts, both of which the district court declined to resolve below. Jackson, 2010 WL 931864, at *14 n. 27. First, Dr. Drouillard argues that the plaintiffs must plead that each defendant committed two predicate acts, as opposed to the enterprise as a whole having committed at least two predicate acts. He cites no case law in support of this argument, and we have found none. See Moon v. Harrison Piping Supply, 465 F.3d 719, 724 n. 2 (6th Cir.2006) (declining to decide issue). Indeed, requiring two acts by each defendant is contrary to the instructions in Reves that someone can participate in an enterprise “directly or indirectly” in violation of RICO. Reves, 507 U.S. at 185, 113 S.Ct. 1163.
Second, the defendants argue that the plaintiffs’ RICO claims fail for the independent reason that the plaintiffs have failed to allege that the defendants “deceived” the plaintiffs into giving up their property rights by their actions. Coca-Cola Br. at 11, 21. The plaintiffs admit that they were not “deceived” by the actions of the defendants; rather, they argue that a misrepresentation is not an element of mail fraud, and even if it is, they have alleged numerous misrepresentations by the defendants both to themselves and to the Board’.[8] The defendants’ argument ap *483 pears at odds with Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008), which disposed of the first-party reliance requirement in RICO claims. Id. at 659, 128 S.Ct. 2131.[9] However, because both of these arguments were not addressed by the district court, we leave it to the district court to consider on remand whether either of the arguments has any merit.
b. Acts are Related
The district court, without deciding the issue, indicated that “[t]he relatedness of the predicate acts alleged by Plaintiffs is a close call.” Jackson, 2010 WL 931864, at *28. We believe the list of nine predicate acts identified by the district court are sufficiently related.
Acts are related for RICO purposes if they “have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.” H.J. Inc., 492 U.S. at 240, 109 S.Ct. 2893. The relationship standard is meant to be broad, not narrow. Brown v. Cassens Transp. Co., 546 F.3d 347, 354 (6th Cir.2008) (“Brown I”), cert. denied, — U.S. -, 130 S.Ct. 795, 175 L.Ed.2d 575 (2009). The acts alleged here are related in the same manner as the allegations we examined in Brown I. At a minimum, “[t]hey have the same purpose: to reduce [Coca-Cola’s] payment obligations towards worker’s compensation benefits by fraudulently denying worker’s compensation benefits to which the employees are lawfully entitled.” Id. at 355; Moon, 465 F.3d at 724.
c. Continuity
The district court concluded that despite the number of predicate acts, the plaintiffs had failed adequately to plead a pattern of racketeering because of a lack of continuity. Continuity can be based on an open-ended or closed-ended theory. The district court held that the plaintiffs failed to allege either. Jackson, 2010 WL 931864, at *30. We disagree.
Under H.J. Inc., a plaintiff shows closed-ended continuity “by proving a series of related predicates extending over a substantial period of time.” 492 U.S. at 242, 109 S.Ct. 2893. In Moon, we held that the plaintiff had failed to allege closed-ended continuity because the only scheme alleged was the one to terminate his own worker’s compensation benefits. Moon, 465 F.3d at 726. We held that such *484 a scheme was no more indicative of “long-term criminal conduct” than a single scheme relating to a single disputed contract. Id. (quoting H.J. Inc., 492 U.S. at 242, 109 S.Ct. 2893). In Brown I, on the other hand, similar allegations of worker’s compensation fraud were sufficient to establish closed-ended continuity because the allegations established “a series of related predicate acts that span well over three years.” 546 F.3d at 355. Here, the pattern in the complaint more closely resembles the allegations of Brown I than in Moon. Although each plaintiff was denied benefits individually, the denials were part of a long-term scheme to deny benefits generally during the nineteen-month period in which the predicate acts considered by the district court were committed. Jackson, 2010 WL 931864, at *30.
The plaintiffs have also sufficiently pleaded open-ended continuity. Open-ended continuity is “established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit.” H.J. Inc., 492 U.S. at 242, 109 S.Ct. 2893. Continuity may be shown where “ ‘the predicates are a regular way of conducting defendant’s ongoing legitimate business.’ ” Brown I, 546 F.3d at 354 (quoting H.J. Inc., 492 U.S. at 243, 109 S.Ct. 2893). Here, as in Brown I, the allegations suggest that the defendants’ scheme would continue on well past the denial of any individual plaintiffs benefits. R. 2 (Am. Comply 12-15) (Page ID # 27-29). Continuity was sufficiently pleaded.
d. Conclusion
Because the plaintiffs’ complaint adequately states a claim for relief under RICO, the district court erred in granting the defendants’ motion to dismiss. On remand, the parties may wish to re-seek leave to amend to conform the pleadings to any additional facts, within the discretion of the district court.
D. RICO Conspiracy Claim
In their Proposed Second Amended Complaint, the plaintiffs attempted to add a count of RICO conspiracy under 18 U.S.C. § 1962(d). The district court determined that the plaintiffs did not unduly delay the filing of the amendments and the defendants would suffer from no prejudice if the amendments were permitted. However, the district court refused to permit amendment on the basis of futility for the same reasons it dismissed the pending claims. Because we hold that the district court erred in its analysis of the substantive elements of a RICO claim as discussed above, we leave it to the district court to decide in the first instance whether to permit the RICO conspiracy claim to go forward.
E. Witness Immunity
Dr. Drouillard argues that he is immune from suit under the witness-immunity doctrine because he examined Jackson and offered a medical opinion. The plaintiffs’ only response on appeal is that the issue was not addressed below, and this is not an exceptional case justifying our review despite that fact. We agree, and we therefore decline to express an opinion on the matter.
F. Motion for Reconsideration Under Rule 59(e) and for Relief From Judgment Under 60(b)(1), (2), and (6)
Because we vacate the final order that was the subject of the plaintiffs’ motion to reconsider and motion for relief from judgment, that portion of the plaintiffs’ appeal is now moot. Air Prods. & Controls, Inc. v. Safetech Int’l, Inc., 503 F.3d 544, 548 (6th Cir.2007).
*485 III. CONCLUSION
For the aforementioned reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

. The caption says "Segwick” but the company spells it “Sedgwick.”

. The plaintiffs appealed from the order granting the motion to dismiss and denying leave to amend, but they do not make any arguments with respect to their motion for leave to amend until their reply brief. However, in many instances, the district court considered the proposed amendments when analyzing the motion to dismiss, the grant of which is appealed and discussed at length. Therefore, to the extent the district court’s motion-to-dismiss analysis relies on the pro- ' posed amendments, we will consider them on appeal rather than deem those arguments waived. We leave it to the parties and the district court whether leave to amend should be reconsidered on remand.

. The plaintiffs argue that the heightened pleading standard in Twombly is inapplicable to small-scale, civil RICO cases, in which the discovery expenses are less than in large-scale antitrust cases. This argument is untenable. After Iqbal, we apply the plausibility standard across the board. 556 U.S. at 684, 129 S.Ct. 1937.

. The plaintiffs also argue that, by invoking Rule 11(b)(3), they should be entitled to discovery before their complaint is dismissed for lack of particularly under Rule 9(b). See Brown v. Cassens Transp. Co., 546 F.3d 347, 356 n. 4 (6th Cir.2008) (“Brown I") (citing cases but declining to decide the issue), cert. denied, - U.S. -, 130 S.Ct. 795, 175 L.Ed.2d 575 (2009). Because we hold that the plaintiffs have adequately pleaded a RICO claim, we again decline to resolve this issue.

. The concurrence makes the unsubstantiated assertion that in a worker’s compensation program, employees relinquish the right to litigate all claims in exchange for no-fault insurance coverage. However, Howard Delivery Service v. Zurich American Insurance Co., 547 U.S. 651, 126 S.Ct. 2105, 165 L.Ed.2d 110 (2006), the case upon which the concurrence relies, merely stands for the proposition that worker's compensation programs protect the employer from common-law tort claims related to the alleged workplace injury. Id. at 662-63, 126 S.Ct. 2105. Here, the plaintiffs do not seek to litigate, or relitigate, tort-based workplace-injury claims. Rather, the plaintiffs are challenging what they allege to be a fraudulent administrative process by which one seeks to make a worker's compensation claim to Sedgwick. A civil RICO claim not only includes elements distinct from those in a common-law tort claim, but also must withstand heightened scrutiny under Rule 9(b) pleading standards. In sum, the worker's compensation program does not offer complete immunity to an employer, and this action is not a second bite at the apple, as the concurrence intimates.

. The concurrence contends that Brown II incorrectly enables an employee’s workplace injury to satisfy the RICO requirement that the injury be to business or property. This assertion misconstrues the holding in Brown II in order to manufacture a disagreement on an issue not before this court. There is no dispute that an allegation of workplace injuries is insufficient by itself to support a civil RICO claim. Here, as in Brown II, the plaintiffs allege a property interest in bringing a worker's compensation claim free of fraud— i.e., they allege a devaluation of a statutory expectancy of worker’s compensation benefits. This theory of liability as pleaded by the plaintiffs is entirely distinct from a run-of-the-mill tort claim in which a plaintiff seeks damages apart from worker’s compensation based on a personal injury at work.

. It is unclear from where the concurrence derives its statement that we would use as evidence of entitlement to damages the fact that an employee had settled his or her claim with the employer. In fact, Brown II restricts plaintiffs from recovering damages under a civil RICO claim that they had already received as part of the settlement agreement. 675 F.3d at 967.

. The plaintiffs correctly state the law on this matter. The concurrence insinuates that but for Brown II, the court would not be bound by the principle that one can establish a civil RICO claim without establishing the traditional elements of common-law fraud. Even without Brown II, however, the concurrence would remain bound by this principle given the following discussion in Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008):
First, as explained above, the predicate act here is not common-law fraud, but mail fraud. Having rejected petitioners' argument that reliance is an element of a civil RICO claim based on mail fraud, we see no reason to let that argument in through the back door by holding that the proximate- *483 cause analysis under RICO must precisely track the proximate-cause analysis of a common-law fraud claim. Reliance is not a general limitation on civil recovery in tort; it is a specialized condition that happens to have grown up with common law fraud. That specialized condition, whether characterized as an element of the claim or as a prerequisite to establishing proximate causation, simply has no place in a remedial scheme keyed to the commission of mail fraud, a statutory offense that is distinct from common-law fraud and that does not require proof of reliance.
Id. at 655-56, 128 S.Ct. 2131 (internal quotation marks and citations omitted). It is thus unclear how this court would not be bound by this principle but for Brown II.

. The concurrence accuses the Brown II opinion of selectively quoting Bridge for the proposition that reliance is not always required in order to establish a RICO violation. Somewhat ironically, the quotation relied upon and paragraphs cited by the concurrence in making this point conveniently omit the contradictory surrounding text, including in one instance a clause in the same sentence. As any careful reader would discern, the Court in Bridge unequivocally determined that reliance is not necessary for a civil RICO claim: "the fact that proof of reliance is often used to prove an element of the plaintiff's cause of action, such as the element of causation, does not transform reliance itself into an element of the cause of action.” 553 U.S. at 659, 128 S.Ct. 2131 (internal quotation marks omitted).