CLAY, Circuit Judge,
concurring in the judgment.
The clear statement rule “implies a special substantive limit on the application of an otherwise unambiguous mandate.” Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 141, 125 S.Ct. 2169, 162 L.Ed.2d 97 (2005) (plurality opinion). The rule provides that “[i]f Congress intends to alter the ‘usual constitutional balance between the States and the Federal Government/ it must make its intention to do so ‘unmistakably clear in the language of the statute.’” Gregory v. Ashcroft, 501 U.S. 452, 460-61, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (quoting Atascadero State Hospital v. Scanlon, 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). Undoubtedly, as the dissent points out, the phrase “injured in [one’s] business or property” in the context of the Racketeer Influenced and Corrupt Organizations Act (“RICO”), see 18 U.S.C. § 1964(c), is unambiguously broad. Dissent at 574. The question is whether Congress intended this broad but nondescript phrase to reach the specific injuries that Plaintiffs assert. Although the dissent is in many ways persuasive, its failure to adequately address the majority’s application of the clear statement rule prevents me from joining it. Because I find no clear statement that Congress intended RICO to reach Plaintiffs’ injury, I would affirm the district court’s dismissal of Plaintiffs’ complaint, and accordingly, I concur in the result reached by the majority.
Plaintiffs’ claimed injury is somewhat novel. They allege that Defendants Coca-Cola and Sedgwick Claims Management Services engaged Defendant Dr. Paul Drouillard “as a ‘cut-off doctor to provide false medical reports” as part of a “fraudulent scheme involving the mail” to “deprive” Plaintiffs of their Michigan workers’ compensation benefits. Jackson v. Segwick Claims Mgmt. Servs., 699 F.3d 466, 473 (6th Cir.2012). I agree with the dissent that Michigan law would regard as an injury to Plaintiffs’ property the allegedly fraudulent interference with Plaintiffs’ ability to make a claim for Michigan workers’ compensation benefits and have that claim fairly adjudicated. Dissent at 577-78 n. 5 (citing Williams v. Hofley Mfg. Co., 430 Mich. 603, 424 N.W.2d 278 (1988)).
I further agree with the dissent that the majority’s emphasis on the coincidence between the personal injury and the injury to Plaintiffs’ claim for benefits leads the majority to embrace an imprecise and atextual standard from our sister circuits. See Dissent at 577-79. While it seems undisputed that RICO liability will not attach where the injuries alleged are personal ones, Reiter v. Sonotone Corp., 442 U.S. *571 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979); Fleischhauer v. Feltner, 879 F.2d 1290, 1300 (6th Cir.1989), there is no textual reason to extend that bar where plaintiffs allege an injury to property for which a personal injury was a necessary precursor. As the dissent notes, “RICO is to be' read broadly ... [and] liberally construed to effectuate its remedial purposes.” Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497-98, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (internal quotation marks omitted); see also Dissent at 573-74. Following the rule laid out in Evans v. City of Chicago, 434 F.3d 916 (7th Cir.2006), that “pecuniary losses flowing from ... personal injuries are insufficient to confer standing under § 1964(c),” the majority ignores the true nature of Plaintiffs’ claimed injury, which is a harm to their ability to bring a claim for workers’ compensation and have that claim fairly adjudicated. See Maj. Op. at 564-67 & n. 4. In doing so, the majority paints with too broad a brush, categorically disclaiming the potential for RICO liability based on the mere fact that Plaintiffs were personally injured in addition to being injured in their property. Such a construction finds no support in the broad and unambiguous text of RICO, and I cannot endorse it.
Since “there is nothing in the text of RICO or the cases they point to that provides for ignoring damage to an intervening legal entitlement because it arose following a personal injury,” Dissent at 579, the basis for the majority’s extension must lie elsewhere. It is clear that the majority is concerned about the dissent’s analysis increasing the number of RICO claims filed,[1] and further, that those claims will upset the balance struck by the Michigan legislature in enacting its workers’ compensation scheme. See Maj. Op. at 568-69; see also Jackson, 699 F.3d at 486 (Batchelder, C.J., concurring in the judgment). But the fact that the majority may disagree with Plaintiffs’ use of RICO also cannot justify reading out property injuries that coincide with personal injuries from RICO’s broad sweep. However, neither can the dissent’s repeated invocation of the Supreme Court’s statement in Sedi-ma that “RICO is to be read broadly,” 473 U.S. at 497, 105 S.Ct. 3275, wholly resolve this case. Because RICO’s text is broad and unambiguous, any limitation of its scope must arise externally. In this case, because Plaintiffs’ alleged property interests deal with a traditional area of state power, the clear statement rule operates to substantively limit a construction of RICO that would interfere with that state power. See Spector, 545 U.S. at 141, 125 S.Ct. 2169.
This Court has recognized that “workers’ compensation is clearly one of the state’s traditional areas of authority.” Saylor v. Parker Seal Co., 975 F.2d 252, 256 (6th Cir.1992). Where a federal statute can be construed in a way that would “intru[de] into traditional state authority,” the clear statement rule requires that we, as a court, find not only breadth but also clearly expressed congressional intent for *572 such an intrusion. Rapanos v. United States, 547 U.S. 715, 738, 126 S.Ct. 2208, 165 L.Ed.2d 159 (2006) (plurality opinion). “[T]he clear statement principle reflects ‘an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere.’ ” Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 544, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002) (quoting Gregory, 501 U.S. at 461, 111 S.Ct. 2395).
Contrary to the dissent’s implication, the clear statement rule is not confined to a few limited contexts. See Dissent at 583 (“[T]he majority makes the erroneous assumption that the clear-statement rule would even apply in this context.”). In addition to the cases collected by the majority, see Maj. Op. at 566-68 & n. 5, there is a raft of more recent cases and contexts in which the clear statement rule has been applied. See, .e.g., Spector, 545 U.S. 119, 125 S.Ct. 2169 (Americans with Disabilities Act); Raygor, 534 U.S. 533, 122 S.Ct. 999 (supplemental jurisdiction); Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng’rs, 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001) (Clean Water Act); Cleveland v. United States, 531 U.S. 12, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) (criminal RICO). Analogous to the present case, in Rapanos, the Supreme Court was tasked with interpreting the phrase “the waters of the United States” as used in the Clean Water Act. 547 U.S. at 730-31, 126 S.Ct. 2208 (plurality opinion). After recognizing that “[rjegulation of land use ... is a quintessential state and local power,” the Court rejected the expansive reading of “the waters of the United States” urged by the government because such a reading “would authorize the [Army] Corps [of Engineers] to function as a de facto regulator of immense stretches of intrastate land.... ” Id. at 737-38, 126 S.Ct. 2208. If Congress had intended such a result, the Court said that it would “ordinarily expect a ‘clear and manifest’ statement from Congress” indicating such an intention. Id. at 738, 126 S.Ct. 2208 (citing BFP v. Resolution Trust Corp., 511 U.S. 531, 544, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)).
Similarly, in this case, adopting the dissent’s reading of RICO could require us to act as a “de facto regulator” of Michigan’s (and likely other states’) workers’ compensation scheme. Arguably, the federal courts would be permitted to entertain RICO causes of actions to ensure a fraud-free workers’ compensation scheme. While this may be a worthy goal, had Congress intended for us to police these state regulatory schemes, which were enacted to avoid resort to traditional courts, see American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 44, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999), it would in all likelihood have spoken more clearly.[2] Therefore, because § 1964(c) contains no clear statement evidencing Congress’ intent for the federal courts to wade into overseeing state workers’ compensation regimes, a traditional area of state purview, I would find that although Michigan law recognizes Plaintiffs’ injury as one implicating a property interest, the injury does not “rise[ ] to the level of ‘business or property’ ” for purposes of RICO. DeMauro v. DeMauro, 115 F.3d 94, 96 (1st Cir.1997).
I therefore concur in the judgment.

. It is not as if every claimant who is denied workers’ compensation benefits will be able to file suit. The pleading standards enunciated in Twombly and Iqbal, as well as the specificity requirements of Federal Rule of Civil Procedure 9(b) and RICO itself impose real obstacles to plaintiffs converting an unfavorable determination by Michigan’s Workers' Compensation Agency into a federal RICO case. See 16630 Southfield Ltd. P'ship v. Flagstar Bank, FSB, 727 F.3d 502, 504-05, 2013 WL 4081909, at *2 (6th Cir.2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); In re ClassicStar Mare Lease Litig., 727 F.3d 473, 483-84, 2013 WL 3746220, at *6-7 (6th Cir.2013) (discussing RICO’s pleading requirements).

. The question of whether Congress possesses the power to regulate in this sphere under the Commerce Clause, or otherwise, and whether Congress could, through the Supremacy Clause, displace Michigan’s intention for its workers' compensation scheme to be the exclusive remedy for on-the-job injuries is distinct from the question of whether Congress did, in fact, do so in enacting RICO. See Maj. Op. at 567-68.